STATE OF NORTH CAROLINA v. GLENN DEVON McKINNEY

No. 622PA05

(Filed 15 December 2006)

**1. Search and Seizure— standing to object to search—findings not sufficient**

The standing of defendant to challenge the search of a murder victim's house was not clear, and the case was remanded, where the court did not make the requisite findings concerning any reasonable expectation of privacy by defendant in the house at the time of the search.

**2. Search and Seizure— illegal entry into murder victim's house—independent probable cause—findings not sufficient**

A trial court order denying a murder defendant's motion to suppress evidence was remanded where police officers gathered outside the house which defendant shared with the missing victim; the victim's brother removed an air conditioner, entered the house, and invited officers inside; bloodstains were noted and a search warrant was obtained; and the body was found during the subsequent search. The Court of Appeals correctly found that there was no immediate need of entry and that the trial court erred to the extent that it relied on exigent circumstances. However, the Court of Appeals did not consider whether there

was independent probable cause and the trial court did not specify the factual or legal basis for its decision.

Justices BRADY and TIMMONS-GOODSON did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 174 N.C. App. 138, 619 S.E.2d 901 (2005), reversing defendant's conviction and the resulting judgment entered 16 April 2004 by Judge L. Todd Burke in Superior Court, Guilford County, and ordering a new trial. Heard in the Supreme Court 19 April 2006.

*Roy Cooper, Attorney General, by William B. Crumpler, Assistant Attorney General, for the state-appellant.*

*Paul F. Herzog for defendant-appellee.*

MARTIN, Justice.

Defendant was convicted of first-degree murder in the death of his roommate, Jerry Louis Alston. We affirm in part, reverse in part, and remand with instructions.

On 17 May 2003, Amy Millikan (Amy) advised Greensboro Police Sergeant D.S. Morgan that her roommate, Aja Snipes (Aja), had confided in her that Aja's friend, "Phoenix," had killed his roommate. Amy provided an address on Drexel Road where she believed "Phoenix" lived, although the house number was later determined to be incorrect. Sergeant Morgan relayed this information to Sergeant Jane Allen and dispatched two other officers to the scene. "Phoenix" was later identified as defendant, Glenn Devon McKinney.

Sergeant Morgan drove to Amy and Aja's apartment to interview Aja about her knowledge of the crime. Aja's description of the house where the victim and defendant lived was relayed to Sergeant Allen, who by that time had arrived at Drexel Road. Two other officers were knocking on doors and checking with neighbors to see if they were aware of two males living on Drexel Road. The officers focused on 1917 Drexel Road because "that's the house that seemed to match the description that was being given."

When Sergeant Allen arrived at 1917 Drexel Road, the residence was locked and secured. Sergeant Morgan informed Sergeant Allen that defendant was reportedly driving the victim's blue Jeep

Cherokee, and Sergeant Allen noted that the Jeep was not in the driveway. The victim's sister, Irma Alston (Irma), arrived and informed Sergeant Allen that her brother lived at 1917 Drexel Road. Irma called her brother, Ricky Alston (Ricky), because she believed that he had a key to the house, although when he arrived on the scene he did not have a key with him. Neither Irma nor Ricky had heard from the victim in several days. Sergeant Allen contacted the victim's employer and learned that the victim had not reported for work the day before as scheduled, which was very unusual.

Sergeant Allen continued to gather information, speaking by telephone with the officers who were interviewing Aja and Amy and hearing conversations between other officers and the victim's family members, who had begun to congregate on the sidewalk outside the residence. Sergeant Allen learned that defendant had told Aja that the victim "pulled a knife on me. I didn't know what else to do," and defendant added that the victim "wouldn't be coming back." When Sergeant Allen returned to the residence after briefly leaving the scene, she found that Ricky had entered defendant's house. After removing an air conditioning unit and climbing through the window, Ricky invited the officers into the house. Accompanied by Sergeant Morgan, who by this time had arrived on the scene, Sergeant Allen entered the residence. The officers later testified that they entered the house to look for "a victim who [might] be in need of assistance" and "for any sign that . . . there may in fact have been an assault there, and perhaps . . . a victim somewhere else that [they] needed to continue a search for." As they went through the house, the officers saw what appeared to be blood spatter in the front bedroom. After this discovery, they left the house, instructed other officers to secure the scene, and went to obtain a search warrant.

After securing a search warrant, Sergeant Allen returned to the residence with Detective David Spagnola. While crime scene specialists investigated the front bedroom, Sergeant Allen and Detective Spagnola noticed a large, city-issued trash can in the laundry room. A towel and two candles were on the lid of the can. The officers believed it was unusual for the trash can to be inside the house, and because Detective Spagnola was unable to lift it, they realized it might contain a victim. The officers asked one of the crime scene specialists to photograph the trash can and its contents. Underneath the towel on the lid of the can was a computer-generated note that said "Glenn Devon McKinney did this." When the officers opened the trash can, they discovered the victim's body inside.

STATE v. McKINNEY

[361 N.C. 53 (2006)]

Defendant was tried non-capitally, convicted of first-degree murder, and sentenced to life imprisonment without parole. Before trial, defendant filed a motion to suppress the evidence obtained from 1917 Drexel Road. His motion challenged not only the officers' initial warrantless entry into the residence at that address, but also the validity of the subsequent search warrant. Defendant contended that the search warrant was invalid because probable cause for issuing the warrant was based in part on the blood spatter evidence obtained by police during their initial entry into the residence. He argued that all evidence seized during the subsequent search should be suppressed, including the victim's body. In response, the state argued that defendant lacked standing to object to the initial warrantless entry of the house, and, in the alternative, that exigent circumstances authorized law enforcement officials to enter the residence. The trial court denied defendant's motion to suppress.

On appeal, the Court of Appeals reversed defendant's conviction, holding that the trial court erred in denying defendant's motion to suppress because the initial police entry into the residence was unlawful and therefore the subsequent search warrant was "fruit of the poisonous tree." *State v. McKinney*, 174 N.C. App. 138, 141, 619 S.E.2d 901, 904 (2005). This Court allowed the state's petition for discretionary review.

[1] We first examine whether defendant had standing to contest the police searches of the victim's house. When the competency of evidence is challenged and the trial court conducts a *voir dire* to determine admissibility, the general rule is that it should make findings of fact to show the basis of its ruling. *State v. Steen*, 352 N.C. 227, 237, 536 S.E.2d 1, 7 (2000), *cert. denied*, 531 U.S. 1167 (2001). If there is a material conflict in the evidence on *voir dire*, the trial court is required to make findings in order to resolve the conflict. *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934 (1971). In the instant case, the trial court failed to make the requisite findings on the issue of whether defendant had standing to challenge the searches of the victim's house.

A defendant has standing to contest a search if he or she has a reasonable expectation of privacy in the property to be searched. *See State v. Mlo*, 335 N.C. 353, 378, 440 S.E.2d 98, 110-11, *cert denied*, 512 U.S. 1224 (1994). A reasonable expectation of privacy in real property may be surrendered, however, if the property is permanently abandoned. *See, e.g., United States v. Stevenson*, 396 F.3d 538, 544-47 (4th

Cir.) (holding defendant lacked standing to contest search of apartment when evidence "strongly suggest[ed] that he did not intend to return to it"), *cert. denied*, 544 U.S. 1067 (2005); *see also Abel v. United States*, 362 U.S. 217, 240-41 (1960) (upholding search of hotel·room because "at the time of the search [defendant] had vacated the room"). When a defendant temporarily abandons property, an intent to return will give rise to a reasonable expectation of privacy. *See United States v. Mulder*, 808 F.2d 1346, 1348 (9th Cir. 1987) (holding defendant had standing to challenge search of hotel room where he returned to hotel only forty-eight hours later than originally intended, hotel billed his credit card for an extra day, and he contacted police to inquire about items later seized); *United States v. Robinson*, 430 F.2d 1141, 1143-44 (6th Cir. 1970) (holding that prosecution failed to establish abandonment of apartment justifying warrantless search thereof when the only admissible evidence of abandonment was premised on defendant's absence and nonpayment of rent for over a month, which shed no light on whether he intended to return). "[A]bandonment will not be presumed . . . [and] must be clearly shown." *Robinson*, 430 F.2d at 1143.

During the suppression hearing in the instant case, the prosecutor raised and properly preserved the issue of defendant's standing to contest the search. Conflicting evidence was presented as to whether defendant maintained a reasonable expectation of privacy in the premises. The trial court did not resolve this conflicting evidence or issue any conclusions as to whether such facts gave rise to a reasonable expectation by defendant of privacy in the victim's residence at the time the search was conducted. Because of this omission, defendant's standing to contest the validity of the search is unclear, and, though we express no opinion on this question, our standard of review compels us to remand the case for findings of fact on this issue.

[2] We now consider the propriety of the initial, warrantless search and the existence of probable cause to support the search warrant. The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures" and provides that search warrants may only be issued "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV; *see also* N.C. Const. art. I, § 20 ("General warrants . . . are dangerous to liberty and shall not be granted."). " '[S]earches and seizures inside a home without a warrant are presumptively

unreasonable.' " *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). "The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances." *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982).

Fourth Amendment rights are enforced primarily through the "exclusionary rule," which provides that evidence derived from an unconstitutional search or seizure is generally inadmissible in a criminal prosecution of the individual subjected to the constitutional violation. *See, e.g., State v. Colson*, 274 N.C. 295, 306, 163 S.E.2d 376, 384 (1968) ("Evidence unconstitutionally obtained is excluded in both state and federal courts as an essential to due process—not as a rule of evidence but as a matter of constitutional law."), *cert. denied*, 393 U.S. 1087 (1969). In short, evidence obtained in violation of an individual's Fourth Amendment rights cannot be used by the government to convict him or her of a crime.

The "fruit of the poisonous tree doctrine," a specific application of the exclusionary rule, provides that "[w]hen evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the 'fruit' of that unlawful conduct should be suppressed." *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992). Only evidence discovered as a result of unconstitutional conduct constitutes "fruit of the poisonous tree." *See Murray v. United States*, 487 U.S. 533, 542 (1988) ("[W]hile the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied."). This limitation on the "fruit of the poisonous tree" doctrine is known as the "independent source rule," which applies when "a later, lawful seizure is genuinely independent of an earlier, tainted one." *Id.* Under such circumstances, the independent source rule provides that evidence obtained illegally should not be suppressed if it is later acquired pursuant to a constitutionally valid search or seizure. *See, e.g., State v. Phifer*, 297 N.C. 216, 224-26, 254 S.E.2d 586, 590-91 (1979) (upholding the admission of evidence despite an illegal search when "the officers, through lawful means, had independently obtained probable cause to suspect that the [area searched] contained contraband").

United States Supreme Court Justice Lewis Powell explained the interplay between the independent source rule and the constitutional validity of a search warrant:

> The independent-source rule has as much vitality in the context of a search warrant as in any other. Thus, for example, unlawfully discovered facts may serve as the basis for a valid search warrant if knowledge of them is obtained from an independent and lawful source. The obvious and well-established corollary is that the inclusion in an affidavit of indisputably tainted allegations does not necessarily render the resulting warrant invalid. *The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause.*

*United States v. Giordano*, 416 U.S. 505, 554-55 (1974) (Powell, J., concurring in part, dissenting in part) (emphasis added) (citation omitted).

The "excise and re-examine" corollary to the independent source rule, as explained by Justice Powell in *Giordano*, qualifies the cardinal principle that if "information used to obtain [a search] warrant was procured through an unconstitutional seizure[,] . . . the warrant and the search conducted under it were illegal and the evidence obtained from them was 'fruit of the poisonous tree.' " *State v. Lombardo*, 306 N.C. 594, 597-98, 295 S.E.2d 399, 402 (1982) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)). If facts in the affidavit independent of the unlawful police conduct created probable cause to issue the warrant, the warrant is valid. *See, e.g., United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993) ("The inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it . . . ."); *United States v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992) (noting that a warrant is valid under the independent source rule so long as the "warrant affidavit, once purged of tainted facts . . . contains sufficient evidence to constitute probable cause"), *cert. denied sub nom. Pulido v. United States*, 506 U.S. 1049 (1993); *United States v. Herrold*, 962 F.2d 1131, 1141, 1144 (3rd Cir.) (applying the independent source rule to uphold a warrant because the application contained probable cause apart from the improper information), *cert. denied*, 506 U.S. 958 (1992);

IN THE SUPREME COURT

**STATE v. McKINNEY**

[361 N.C. 53 (2006)]

*United States v. Johnston*, 876 F.2d 589, 592 (7th Cir.) ("[W]e must consider whether 'the untainted information, considered by itself, establishes probable cause for the warrant to issue.' " (quoting *United States v. Alexander*, 761 F.2d 1294, 1300 (9th Cir. 1985))), *cert. denied*, 493 U.S. 953 (1989); *Alexander*, 761 F.2d at 1300 (" '[W]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue.' " (quoting *James v. United States*, 418 F.2d 1150, 1151 (D.C. Cir. 1969))); *United States v. Williams*, 633 F.2d 742, 745 (8th Cir. 1980) (" '[I]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.' " (quoting *James*, 418 F.2d at 1152)); *cf. Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding that when *false statements* are knowingly or recklessly made by an officer in a warrant application, they must be "set to one side, [and if] the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded"); *United States v. Veillette*, 778 F.2d 899, 904 (1st Cir. 1985) (holding that knowingly including a *false statement* in a warrant affidavit is "the functional equivalent" of including illegally obtained information, and the appropriate analysis in either circumstance is to set aside the tainted information and determine if the remaining content supports probable cause), *cert. denied*, 476 U.S. 1115 (1986); *State v. Louchheim*, 296 N.C. 314, 321, 250 S.E.2d 630, 635 ("[T]here was probable cause to support the search warrant on the face of the affidavit when [the] false information is disregarded."), *cert. denied*, 444 U.S. 836 (1979).

In light of these well-settled Fourth Amendment principles, we examine two distinct issues: (1) whether the officers' initial, warrantless entry into the residence at 1917 Drexel Road was constitutionally permissible under a recognized exception[1] to the warrant requirement; and (2) if not, whether sufficient untainted evidence not derived from the unreasonable warrantless search provided probable cause to issue the search warrant. The Court of Appeals properly decided the first issue, but failed to address the second.

---

1. The parties and the Court of Appeals have variously labeled the alleged exception to the warrant requirement in the instant case as "exigent circumstances," "emergency activities," and "emergency response." *See generally* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.6(a)-(c), at 451-79 (4th ed. 2004).

The officers' initial search of defendant's house was conducted without a warrant and was therefore presumptively unreasonable. *See Smith*, 346 N.C. at 798, 488 S.E.2d at 213 (noting that searches "inside a home without a warrant are presumptively unreasonable" (citation omitted)). To overcome this presumption, the state had to establish that the officers' initial, warrantless entry fell within a recognized exception to the warrant requirement. *See generally Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (citations omitted)); *Vale v. Louisiana*, 399 U.S. 30, 34 (1970) ("[O]nly in a few specifically established and well-delineated situations may a warrantless search of a dwelling withstand constitutional scrutiny . . . . The burden rests on the State to show the existence of such an exceptional situation." (citation and internal quotation marks omitted)). The Court of Appeals found that the circumstances surrounding the initial entry into defendant's house, "when viewed in [their] entirety, d[id] not establish an immediate need of entry into [the] residence." *McKinney*, 174 N.C. App. at 146, 619 S.E.2d at 906-07. Applying established Fourth Amendment law, the Court of Appeals properly concluded "that the State failed to establish any exigent circumstances authorizing the officers' warrantless entry." *Id.* at 146, 619 S.E.2d at 907. We affirm that portion of the Court of Appeals decision which held that "to the extent that the trial court relied upon exigent circumstances in reaching its decision, . . . the trial court erred." *Id.*

Because the officers' initial entry was unlawful, the Court of Appeals concluded that "the subsequent search warrant was based upon 'fruit of the "poisonous" tree.' " *Id.* at 141, 619 S.E.2d at 904. However, the Court of Appeals did not undertake a necessary step in ascertaining the constitutional validity of a search warrant: It did not consider whether the detective's warrant application to the issuing magistrate established probable cause for the warrant independent of the illegally obtained evidence.

If the affidavit supporting a warrant application includes information obtained illegally, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) (citation omitted); *see also United States v. Cusumano*, 83 F.3d

1247, 1250 (10th Cir. 1996) (noting that a reviewing court "may disregard allegedly tainted material in the affidavit and ask whether sufficient facts remain to establish probable cause"); *United States v. Korman*, 614 F.2d 541, 547 (6th Cir.) (indicating that the court can "examine the balance of the underlying search warrant affidavit for probable cause in order to determine whether the evidence lawfully obtained was sufficient to [uphold] the search and seizure"), *cert. denied*, 446 U.S. 952 (1980).

Thus, the admissibility of the evidence defendant sought to suppress turns on whether the *untainted* evidence in the supporting affidavit established probable cause to search his residence. Any information in the warrant affidavit that was acquired during the illegal warrantless entry must be excised. Specifically, the following portion of the affidavit must be disregarded, as it was derived exclusively from the officers' unlawful warrantless search:

> Rick Alston then entered the residence, concerned for his brother's well being, and allowed Detective J.F. Allen to walk through it with him. What appears to be blood spatters on the walls of a bedroom, blood smudges in the carpet of the bedroom and bloodstains on one chair were located in the residence. No one was located inside.

With this tainted information excised, the validity of the search warrant (and consequently, the admissibility of the physical evidence seized thereunder) depends on whether the remaining information set forth in the warrant affidavit was sufficient to establish probable cause to search defendant's house.

The existence of probable cause is a "commonsense, practical question" that should be answered using a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *State v. Arrington*, 311 N.C. 633, 637, 319 S.E.2d 254, 257 (1984). " 'Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false.' " *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (quoting *State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984)). "Reviewing courts should give great deference to the magistrate's determination of probable cause and should not conduct a de novo review of the evidence to determine whether probable cause existed at the time the warrant was issued." *State v. Greene*, 324 N.C. 1, 9, 376 S.E.2d 430, 436 (1989), *judgment vacated on other grounds*, 494 U.S. 1022 (1990).

In the instant case, however, the trial court's order denying defendant's motion to suppress did not specify the factual or legal basis for the decision. *See McKinney*, 174 N.C. App. at 143, 619 S.E.2d at 905 ("[I]n its order denying defendant's motion to suppress, the trial court merely summarized the evidence presented at *voir dire* and offered a blanket conclusion regarding the ultimate issue before it."). Rather, the trial court's order contained limited findings of fact. None of these findings indicates whether the trial court would have found the evidence seized pursuant to the warrant admissible even if the tainted evidence had been excised from the warrant application. As such, the record in this case does not reveal the extent to which consideration of the illegally obtained information affected the trial court's determination that the evidence seized pursuant to the warrant should not be suppressed.

The United States Supreme Court has safeguarded the role of trial courts in making "independent source" determinations with respect to evidence challenged on Fourth Amendment grounds. In *Murray v. United States*, federal agents had entered a warehouse without a warrant, wherein they observed in plain view bales of what they believed to be marijuana. 487 U.S. at 535. They immediately left the premises and obtained a search warrant. *Id.* The agents' warrant application "did not mention the prior entry, and did not rely on any observations made during that entry." *Id.* at 536. Before trial, petitioners Murray and several co-conspirators sought to suppress the evidence seized from the warehouse pursuant to the warrant, arguing that the warrant was tainted by the prior warrantless entry. *Id.* On appeal from the district court's denial of petitioner's motion to suppress, the First Circuit found no error in the trial court's decision, concluding that " '[t]his is as clear a case as can be imagined where the discovery of the contraband . . . was totally irrelevant to the later securing of a warrant . . . . [T]here was no causal link whatever between the illegal entry and the discovery of the challenged evidence . . . .' " *Id.* at 542-43 (quoting *United States v. Moscatiello*, 771 F.2d 589, 604 (1st Cir. 1985)). The Supreme Court disagreed, admonishing: "[I]t is the function of the District Court rather than the Court of Appeals to determine the facts, and we do not think the Court of Appeals' conclusions are supported by adequate findings." *Id.* The Supreme Court ordered that the case be remanded "to the District Court for determination whether the warrant-authorized search of the warehouse was an independent source of the challenged evidence in the sense we have described." *Id.* at 543-44.

Under circumstances similar to the instant case, the United States Court of Appeals for the Ninth Circuit explained why remand to the trial court was more appropriate than unilateral appellate court determination of the warrant's validity:

> The [trial] court . . . never made an inquiry as to whether the search warrant was based upon independent evidence. . . .
>
> While in the present case, there appears to be sufficient independent evidence to have prompted the issuance of a search warrant despite some reference to the illegal entry, this is essentially the duty of the district court to make the appropriate finding. We therefore vacate and remand to the district court to inquire into the basis for the search warrant.

*United States v. Driver,* 776 F.2d 807, 812 (9th Cir. 1985) (footnote omitted). Other federal circuit courts which have addressed this issue have generally reached the same conclusion: When illegally obtained information was presented in a warrant application and it is unclear whether the trial court would have upheld the validity of the warrant based on the untainted information alone, the appropriate action is to remand the case so that the trial court may determine whether probable cause exists absent the tainted evidence. *See, e.g., id.; United States v. Runyan,* 275 F.3d 449, 468 (5th Cir. 2001) (remanding to the trial court for a determination whether, absent a reference to illegal pre-warrant search activities, the magistrate would have issued the warrants); *United States v. Richardson,* 949 F.2d 851, 859-60 (6th Cir. 1991) (remanding to the trial court for determination of whether an independent basis supported the search warrant or if discovery of the evidence was inevitable). *But see United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.) ("A determination of whether probable cause existed must be made by us independently, as the deference usually accorded to a magistrate's finding of probable cause is not appropriate when the magistrate relied in part on improper information." (citations omitted)), *cert denied. sub nom. Fisher v. United States,* 474 U.S. 819 (1985).

This Court has generally followed the same remedial course of action when "the conclusion [of law] is based upon such a careful assessment of the facts, and actually constitutes the application of a standard to the facts." *State v. McDowell,* 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984), *cert. denied,* 476 U.S. 1165 (1986). In such cases, "we believe it is appropriate to hold that the conclusion should, in the first instance, be made by the trial court." *Id.* This

rule recognizes the "trial courts' 'institutional advantages' over appellate courts in the 'application of facts to fact-dependent legal standards.' " *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004) (quoting *Augur v. Augur*, 356 N.C. 582, 586, 573 S.E.2d 125, 129 (2002)). Thus, we decline to speculate as to the probable outcome in the instant case had the trial court analyzed the validity of the search warrant based only on the legally obtained information in the affidavit. We therefore should afford the trial court an opportunity to evaluate the validity of the warrant using the appropriate legal standard.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part, and the portion of that Court's judgment reversing defendant's conviction is vacated. We therefore remand this case to the Court of Appeals with instructions to remand to the trial court for further proceedings consistent with this opinion. As to the additional questions presented by the state, we conclude that discretionary review of those issues was improvidently allowed.

JUDGMENT VACATED; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justices BRADY and TIMMONS-GOODSON did not participate in the consideration or decision of this case.