FRANCES HUFFMAN, ROGER D. KENNEDY, MARILYN DAWN KIDD, THOMAS P. MARSH, FRANKIE McCASKILL, DEBORAH K. ROGERS, SHARON P. SCOTT, EMPLOYEES, PLAINTIFFS v. MOORE COUNTY, EMPLOYER, AND SEDGWICK OF THE CAROLINAS, INC., CARRIER, DEFENDANTS

No. COA08-128

(Filed 16 December 2008)

**Workers' Compensation— findings—recitation of testimony— general finding of credibility**

A workers' compensation case involving toxin exposure in a building was remanded for further findings, with the possibility of taking new evidence due to medical developments since the original filing. The Commission's findings recited or summarized testimony, but did not state the facts the Commission was finding, and general statements that the Commission finds a witness credible do not reveal the part of the testimony the Commission finds as a fact.

Appeal by Plaintiffs from Opinion and Award entered 27 September 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 October 2008.

*Lennon & Camak, PLLC, by George W. Lennon, and Michael W. Bertics, for Plaintiffs-Appellants.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis, III, and J. Matthew Little, for Defendants-Appellees.*

ARROWOOD, Judge.

The Plaintiffs in this case are Frances Huffman, Roger D. Kennedy, Marilyn Dawn Kidd, Thomas P. Marsh, Frankie McCaskill, Deborah K. Rogers, and Sharon P. Scott, former Moore County employees who worked in the Community Services Building owned by the County. The Defendants in this case are Moore County and its insurance carrier, Sedgwick of the Carolinas, Inc.

From February 1995 to April 1996, Plaintiffs filed workers' compensation claims alleging multiple effects of toxin exposure that occurred while they occupied the Community Services Building owned by Moore County. Defendants denied all of the claims on the basis that no injury occurred and Plaintiffs' complaints did not arise from causes and conditions characteristic of and peculiar to their respective employments to which members of the general public were not equally exposed.

Plaintiffs' claims were consolidated for hearing and heard before Deputy Commissioner Crystal R. Stanback . . . [who] awarded Plaintiffs Scott, McCaskill, Kidd, Huffman, and Rogers permanent and total disability compensation at their respective compensation rates; and awarded Plaintiffs Marsh and Kennedy temporary total disability compensation at their respective compensation rates. Defendants' appeal to the full Commission resulted in an order denying Plaintiffs' claims. From that denial, Plaintiffs appeal[ed] to this Court.

*Huffman v. Moore County,* 184 N.C. App. 187, 645 S.E.2d 899 (2007) (unpublished) (hereinafter *Huffman I*).

In *Huffman I*, this Court "reach[ed] only the issue regarding the Commission's failure to make proper findings of fact related to the issue of spoilation of relevant evidence." The Court held that the Commission failed to make findings of fact resolving the conflicting evidence on the issue, and instead "merely recited what [the witnesses] testified to[.]" This Court reversed and remanded for proper findings of fact. On remand, the Commission issued a new opinion which stated that:

In accordance with the directives of the North Carolina Court of Appeals, the Full Commission has added Findings of Fact numbers 29 and 30 and modified Finding of Fact number 32. In all other respects the October 25, 2005 Opinion and Award of the Full Commission remains the same.

The Commission's Opinion and Award, filed 27 September 2007, again denied Plaintiffs' claims for workers' compensation benefits. Plaintiffs have appealed to this Court. We reverse and remand for "specific findings of fact as to each material fact upon which the rights of the parties . . . depend." *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109 (1981) (citations omitted).

"Findings of fact are statements of what happened in space and time." *State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987). For example in the present case, Finding No. 11 states in part that "Dr. Roy Fortmann and Russ Clayton of Acurex Environmental visited the CSB and met with Philip Boles, Sam Fields and Bobby Lake[.]" However, "[a] determination which requires the exercise of judgment or the application of legal principles is more appropriately a conclusion of law." *Guox v. Satterly*, 164 N.C. App. 578, 582, 596 S.E.2d 452, 455 (2004) (citing *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)). Thus, the statement in Finding No. 104 that "plaintiffs have not proven that their symptoms were caused by or significantly aggravated by their employment with defendant-employer" is more properly designated a conclusion of law.

"This Court has long recognized that the Industrial Commission is the sole fact finding agency in cases in which it has jurisdiction and that the finding of facts is one of the primary duties of the Commission." *Vieregge v. N.C. State University*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992) (citations omitted). In *Thomason v. Cab Co.*, 235 N.C. 602, 605-06, 70 S.E.2d 706, 709 (1952), the North Carolina Supreme Court stated that:

It is impossible to exaggerate how essential the proper exercise of the fact-finding authority of the Industrial Commission is to the due administration of the Workmen's Compensation Act. The findings of fact of the Industrial Commission should tell the full story of the event giving rise to the claim for compensation. They must be sufficiently positive and specific to enable the court on appeal to determine whether they are supported by the evidence and whether the law has been properly applied to them. . . . [T]he

court cannot decide whether the conclusions of law and the decision of the Industrial Commission rightly recognize and effectively enforce the rights of the parties upon the matters in controversy if the Industrial Commission fails to make specific findings as to each material fact upon which those rights depend.

Moreover, "findings of fact must be more than a mere summarization or recitation of the evidence and the Commission must resolve the conflicting testimony." *Lane v. American Nat'l Can Co.*, 181 N.C. App. 527, 531, 640 S.E.2d 732, 735 (2007) (citing *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109 (1981)) (other citation omitted.).

In the instant case, the Commission filed an Opinion with more than 100 findings of fact. Many of these recited or summarized the witness testimony, but did not state the facts that the Commission found to exist based on that testimony. By way of example, we note the following excerpts from the findings of fact:

3. Budd Hill Shirer . . . testified . . . that he witnessed substances being poured down the drain in the CSB . . . including trichloroethylene, toluene, . . . and other chemical solvent degreasing agents. . . .

. . . .

6. On June 21, 1994, William Pate, an industrial hygiene consultant . . . inspected the CSB. . . . [In his] testimony, Mr. Pate explained that carbon dioxide concentrations were well below the acceptable limit of 1000 parts per million. . . . Mr. Pate testified that he did not see anything during his inspection that would have caused him concern for the safety of the employees.

. . . .

10. . . . [William Pate] testified that on July 20, 1994, he . . . conduct[ed] air sampling for residual pesticide concentration in the air and for volatile organic compounds. . . . The test results of the volatile organic compounds were below the limits specified by [OSHA] . . . and according to William Pate, may be related to the new paint, carpet and vinyl flooring. Mr. Pate testified that these levels would decrease over time.

. . . .

12. . . . [P]eppermint oil was poured into the sewer line . . . to determine if there were any leaks in the septic system. According to Mr. Boles . . . no peppermint odor [was] detected inside the building. This indicated, according to Mr. Boles, that . . . the sewer line was pushing air out of the building[.]

. . . .

15. . . . Acurex Environmental's report stated, "it is unlikely that any of the 72 volatile organic compounds targeted for analysis occur at concentrations of concern in the soil near the locations where the samples were collected. . . ."

. . . .

17. . . . [Roy Fortmann, PhD.] testified that volatile organic compounds were detected in the indoor air samples, but . . . the concentrations were what would be considered "typical" of . . . an office building. . . .

. . . .

24. . . . [Flint Worrell] conducted a sampling of two septic tanks and two soil samples from the area. . . . According to Mr. Worrell's deposition testimony, it would be likely to find some amount of chemicals inside a septic tank. . . .

. . . .

26. Samuel W. Fields . . . testified that no volatile organic compounds or other toxic or pathogenic substances were ever detected in the CSB at a level in excess of OSHA's permissible exposure limits or the ACIGH's threshold limits value.

. . . .

33. Joyce Hendricks . . . testified that Antex Exterminating had a contract for monthly pesticide applications in . . . Moore County office buildings [and] . . . testified that neither safrotin nor boric acid aerosols were ever used[.]

. . . .

39. . . . [P]laintiff [Huffman] testified that her first episode of sickness occurred when the insulation was being taken out of the ceiling. She stated that she experienced a choking sensa-

tion and felt as if she could not breathe. Plaintiff further testified that she has had similar episodes of bronchial spasms and swelling since then[.]

. . . .

41. Although Dr. Bell testified that plaintiff's symptoms could be related to the environment in the CSB, he admitted that each and every symptom of multiple chemical sensitivity, chronic fatigue syndrome, and fibromyalgia can be explained by some other illness, either psychological or physiological. According to Dr. Bell, causes of fatigue other than chemical exposure could include post Epstein-Barr virus infection, metabolic abnormalities such as hypothyroidism, anemia, diabetes, chronic liver and kidney disease; malignant syndromes, depression and, in his opinion, obesity and sleep apnea.

42. On September 29, 1998, plaintiff [Huffman] presented to Dr. Howard Jones[.] . . . Dr. Jones opined that there was insufficient evidence to support a diagnosis other than an obstructive lung disease, such as recurrent bronchitis.

43. In his report, Dr. Jones stated, "there is a substantial debate in the scientific community regarding whether chronic fatigue syndrome or multiple chemical sensitivity syndrome are diagnosable entities *per se*, given that in many of these case[s], substantial functional overlay exists."

. . . .

45. Dr. John B. Winfield, a professor at the University of North Carolina School of Medicine . . .[reviewed] plaintiffs' medical records and . . . opined that plaintiff's illness was not caused by environmental agents to which she may have been exposed while employed in the CSB[.] . . . Dr. Winfield opined that factors . . . such as obesity, habitual inactivity, iron-deficiency anemia and psychological variables are more likely causes of her symptoms.

. . . .

72 . . . [P]laintiff [Scott] testified that her symptoms included difficulty breathing,. sinus infections, fatigue, fibromyalgia, chemical sensitivity, loss of sleep, cognitive difficulties, and rashes. She testified that upon returning to the building

twice after renovations, she started having trouble breathing again. . . .

73. . . . [Dr.] Staudenmayer conducted an independent psychological evaluation of plaintiff[,] . . . [and] opined that [Scott] is a "hard-driving woman with personality traits of obsessiveness and repressed hostility. . . . She also had identifiable traits associated with obsessive-compulsive personality disorder." Dr. Staudenmayer opined that to a reasonable degree of psychological certainty plaintiff's complaints are psychogenic and are not causally related to exposures to environmental agents during her employment in the CSB.

74. . . . Dr. John Winfield opined with a reasonable degree of medical certainty that [Scott's] illness was not caused by environmental agents to which she may have been exposed while working in the CSB.

. . . .

80. Dr. John Winfield reviewed plaintiff [Roger's] medical records and opined that plaintiff's illness was not caused by environmental agents to which she may have been exposed while employed in the CSB since a toxic exposure was not established and the opinions of other doctors were not supported by the facts of the case or generally accepted information in medical and scientific literature. . . . Dr. Winfield opined that more likely than not plaintiff's fatigue was psychologically based.

. . . .

91. Dr. Charles Lapp, an internist and a certified independent medical examiner, . . . testified that the diagnosis of multiple chemical sensitivity is not a scientifically valid diagnosis. . . . Dr. Lapp testified that it was "well-accepted that we don't have a lot of data in this regard as to the exact cause of multiple chemical sensitivities" and that it is not yet scientifically proven and at the present time, it is an idiosyncratic condition caused by unexplained reasons.

94. Dr. John B. Winfield . . . conduct[ed] a study of 400 patients with fibromyalgia. In his opinion, the ongoing chronic stress and distress from almost purely psychological factors is at the heart of the physical illnesses exhibited by the plaintiffs in this case. Dr. Winfield further opined that very likely plain-

tiffs would have had the same symptoms whether or not they had worked in the CSB.

95. ... Dr. Winfield stated, "scientific medicine does not accept the pseudoscience and speculation of illness and causation upon which the opinions of certain health professionals involved in [this case] have been based. ... "

These findings merely recite or summarize witness testimony, but do not state what the <u>Commission</u> finds the facts to be. Additionally, general statements by the Commission that it finds a witness "credible" do not reveal what part of that witness's testimony the Commission finds as fact.

We conclude that the Opinion and Award of the Commission must be reversed and remanded for proper findings of fact. We reiterate that the above quoted findings of fact are examples only, not a complete listing of the findings of fact that require review by the Commission. We also note that expert testimony in this case reflects the uncertainty about fibromyalgia and multiple chemical sensitivity that existed when the depositions were taken. However, Plaintiffs originally filed their workers' compensation claims more than ten years ago, and in the intervening years the medical community may have gained a greater understanding of these conditions. Accordingly, the Commission may, in its discretion, reopen the case for new evidence.

Reversed and Remanded.

Judges WYNN and BRYANT concur.