IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-138

Filed 17 December 2024

Rowan County, No. 20CRS051075

STATE OF NORTH CAROLINA

v.

CURTIS LEE STOLLINGS

Appeal by Defendant from Judgment entered 12 July 2023 by Judge Joseph N. Crosswhite in Rowan County Superior Court. Heard in the Court of Appeals 10 September 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Martin T. McCracken, for the State.*

*Cynthia Everson for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Curtis Lee Stollings (Defendant) appeals from the trial court's Order denying his Motion to Suppress and from a Judgment entered 12 July 2023 after Defendant pleaded guilty to Possession of Drug Paraphernalia, Possession of Methamphetamine, and Carrying a Concealed Handgun. The Record before us tends to reflect the following:

On the evening of 7 March 2020, the Rowan County Sheriff's Office (RCSO) was conducting a "special project" around a "fish game arcade" in Salisbury, North

Carolina. During the investigation, RCSO Detectives Gerald Gordy and Kelvin Peoples ran the license plate on a parked black SUV and discovered it was registered to a woman whom the Detectives believed to be Defendant's spouse or girlfriend. Detective Gordy later testified he was familiar with Defendant because he had received information in the past that Defendant sold drugs, although he could not recall how recent that information was or from whom he had received it.

Based on this limited information alone, the Detectives decided to follow the vehicle. The SUV left the fish arcade and briefly entered a gas station parking lot, where a small pick-up truck was also parked. Shortly thereafter, the SUV left the gas station, followed by the pick-up truck, and both vehicles pulled into the parking lot of an Applebee's approximately a half mile away. Both vehicles remained a "very short period of time" before leaving the parking lot and driving in different directions. At no point did anyone in either vehicle exit their respective vehicle, nor was any illegal activity observed.

After leaving the Applebee's parking lot, the SUV traveled up I-85 toward Davidson County. At the Davidson County line, the Detectives stopped the vehicle; the basis for the stop was Defendant's speeding five miles over the speed limit. Defendant was driving the SUV, with a woman in the passenger seat and a child in the back seat. During the stop, K-9 Sergeant William Basinger arrived with his K-9, Kantor; Kantor is trained to sniff for the presence of various illegal drugs, including methamphetamine. Sergeant Basinger conducted a sniff for drugs with the K-9

around the SUV.  Detectives Gordy and Peoples were informed the K-9 "alerted" for the presence of drugs near the gas lid on the rear driver's side of the vehicle.  Neither Detective Gordy nor Detective Peoples personally observed Kantor alert.  Sergeant Basinger's body camera did not capture footage of the sniff.

After being informed the K-9 alerted, Detective Peoples searched Defendant. Detective Peoples reached into Defendant's pants pocket and discovered methamphetamine.  At the suppression hearing, Detective Peoples could not recall whether he first frisked Defendant before reaching into Defendant's pocket. While Detective Peoples searched Defendant, Detective Gordy searched the vehicle and discovered a black handgun between the driver's seat and the middle console.  Upon discovery of the handgun, since Detective Gordy was not wearing a body camera, he asked Detective Peoples to continue the search of the vehicle.  Detective Peoples then completed the search of the vehicle, seizing the handgun and a set of scales.  No drugs were found in the vehicle.

On 6 December 2021, Defendant was indicted for Possession of Drug Paraphernalia, Possession with Intent to Sell or Deliver Methamphetamine, and Carrying a Concealed Handgun.  Prior to trial, Defendant moved to suppress "all of the evidence in this case" as the product of an unlawful search and seizure.  The trial court denied the Motion, concluding that "based on the positive alert by K-9 Kantor, the officers had reason to search both the person and the vehicle of the defendant." Following the denial of his Motion to Suppress, Defendant entered into a plea

agreement, reserving his right to appeal the denial of the Motion. In exchange for Defendant's plea, the State agreed to a "consolidated . . . judgment for the drug charges and to leave sentencing for the gun charge in the Court's discretion." On 12 July 2023, the trial court, pursuant to the plea agreement, entered a Judgment for the charge of Carrying a Concealed Handgun and a Conditional Discharge for the consolidated drug charges. The trial court's written Order denying the Motion to Suppress was filed on 23 August 2023. Defendant timely filed written Notice of Appeal on the same day.

## Issue

The dispositive issue on appeal is whether the trial court's written Findings of Fact and Conclusions of Law support its denial of Defendant's Motion to Suppress.

## Analysis

"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [the trial court's] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Reynolds*, 161 N.C. App. 144, 146-47, 587 S.E.2d 456, 458 (2003) (citation and quotation marks omitted). The trial court's conclusions of law, however, are reviewed de novo. *See State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) (citation omitted). Whether the trial court describes its conclusions as findings of fact or conclusions of law makes no difference to our review: "[w]e will review conclusions of law de novo regardless of the label applied by the trial court." *State v.*

*Jackson*, 220 N.C. App. 1, 8, 727 S.E.2d 322, 329 (2012) (citation and quotation marks omitted).

A. *Findings of Fact*

The trial court's Order denying the Motion to Suppress contains thirty-eight Findings of Fact. Our review of the Order is frustrated because the trial court failed to resolve conflicts in the evidence with its Findings, instead reciting the testimony of the investigating officers. "Although . . . recitations of testimony may properly be included in an order denying suppression, they cannot substitute for findings of fact resolving material conflicts." *State v. Lang*, 309 N.C. 512, 520, 308 S.E.2d 317, 321 (1983). Here, material conflicts remain in the evidence as to whether the officers observed Defendant engage in suspicious activity, the basis for the search of Defendant's person, and whether the K-9 positively alerted on Defendant's vehicle for the presence of drugs. Of the Findings Defendant challenges, Findings 19, 26, 27, 33, and 36 are most relevant to our discussion. We take each of these Findings in turn.

1. *Finding of Fact 19*

Finding of Fact 19 is a summary of Detective Gordy's testimony from the suppression hearing stating he considered the activity of the SUV to be suspicious:

> (19) That Detective Gordy further testified that he saw nothing illegal but did see suspicious activity that he associated with drug activity based on his training and experience such as the activity in the parking lots, the time of day, traveling to the same places as the other vehicle for a short period of time and the vehicles following each other to a separate location, that from Detective Gordy's training and experience he testified that from this

activity he was able to form probable cause of drug activity;
Defendant contends Finding of Fact 19 is more properly characterized as a Conclusion of Law since it refers to a determination of probable cause and alternatively argues it is unsupported by competent evidence. Defendant argues the activity the Finding describes—traveling in a parking lot with another vehicle at night—is innocent and cannot support a probable cause determination.

We cannot impart meaningful appellate review of factual findings that "merely recite or summarize witness testimony, but do not state what the [trial court] finds the facts to be." *See Huffman v. Moore Cty.*, 194 N.C. App. 352, 359, 669 S.E.2d 788, 792-93 (2008). "[Material conflicts in the evidence] must be resolved by explicit factual findings that show the basis for the trial court's ruling." *State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015) (citations omitted). It is unclear whether, by including this recitation of Detective Gordy's testimony in Finding 19, the trial court is concluding Detective Gordy's observations gave him probable cause, so that we should review this Conclusion de novo, or is merely finding Detective Gordy personally believed he had probable cause. Alternatively, Finding 19 might be a Finding that the alleged suspicious activity was in fact observed by Detective Gordy, or that the alleged suspicious activity was in fact indicative of drug activity. We cannot choose between these competing inferences. "[O]nly the trial court, as fact-finder, can determine which inferences shall be drawn and which shall be rejected." *State v. Jordan*, 385 N.C. 753, 759, 898 S.E.2d 279, 284 (2024) (citation and quotation

marks omitted).

Our Supreme Court has articulated the problem in the context of orally-made findings:

> "[W]hen announcing an oral ruling, trial courts often will describe the testimony and evidence received at the hearing. The court might say, 'The officer testified that the door was open.' Is this a finding that the officer's testimony is credible and, thus, a finding that the door was indeed open? On a cold appellate record, it can be hard to tell."

*Id.* at 757, 898 S.E.2d at 283.

The same issue arises when the written order only "describe[s] the testimony and evidence received at the hearing." *Id.* Both Detectives Gordy and Peoples testified the observations described in Finding 19 informed their belief Defendant was engaged in a drug transaction. Detective Peoples testified this same belief informed his reasons for searching Defendant's person. Finding of Fact 19 is a recitation of Detective Gordy's testimony that he believed the activity to be suspicious, but fails to resolve whether his observations were accurate, indicative of drug activity, or actually and properly served as the basis of a probable cause determination.

### 2. *Findings of Fact 26 and 27*

Findings 26 and 27 fail to resolve another material conflict: whether the officers searched Defendant's person based on reasonable concerns about officer safety or in order to find drugs. Finding 26 recites Detective Peoples' testimony that

he searched Defendant for weapons, while Finding 27 recites Detective Peoples'

testimony that he couldn't remember whether he frisked Defendant before reaching

into his pockets and finding methamphetamine:

> (26) . . . Detective Peoples indicated that he first searched the defendant due to activity and to ensure that the defendant did not have any weapons on his person;

> (27) Detective Peoples testified that he couldn't recall specifically if he felt something in the pocket before he reached in or not but that the pat down was due to the nature of the stop, the hour of the night, the fact that these are trained crime-reduction unit officers, narcotics officers, FBI task force officers, and that that is the reason for the search. During the search of the defendant, Detective Peoples located methamphetamine in the defendant's pants pocket . . .

Warrantless searches "are per se unreasonable under the Fourth Amendment—

subject only to a few specifically established and well delineated exceptions."

*Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334,

343-44 (1993) (citations and quotation marks omitted).

> One such exception was recognized in Terry v. Ohio, which held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[,] the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions.

*Id.* at 372-73, 113 S. Ct. at 2135, 124 L. Ed. 2d at 344 (alteration, citations, and

quotation marks omitted). The standard in *Terry* applies to traffic stops. *Berkemer*

*v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149, 82 L. Ed. 2d 317, 334 (1984);

*State v. Otto*, 366 N.C. 134, 137, 726 S.E.2d 824, 827 (2012).

"[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon." *Dickerson*, 508 U.S. at 373, 113 S. Ct. at 2136, 124 L. Ed. 2d at 344 (citations and quotation marks omitted). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.]" *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612, 617 (1972). The relevant inquiry is whether the officer had a reasonable belief that the individual was armed and dangerous. *See id.* at 146, 92 S. Ct. at 1923, 32 L. Ed. 2d at 617; *Terry v. Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 1881, 20 L. Ed. 2d 889, 908 (1968). Our courts follow these same principles. *See, e.g.*, *State v. Harris*, 95 N.C. App. 691, 697, 384 S.E.2d 50, 53 (1989) (citation omitted) ("[I]t is well within the law to conduct a frisk of a defendant for weapons when it is strictly limited to determination of whether that defendant was armed.").

Defendant argues the search was conducted not to locate weapons, but because it was Detective Peoples' routine practice; Defendant further argues there is no evidence that Detective Peoples frisked Defendant before reaching into his pockets, and even if he had, there was no basis to justify a *Terry* frisk because the officers could not have justifiably believed Defendant was armed.

Findings 26 and 27 recite testimony that might support a finding that the

search of Defendant's person was based on Detective Peoples' reasonable belief Defendant was armed and dangerous. Other testimony at the suppression hearing, however, showed Defendant was searched immediately and only after the K-9 alerted. Thus, a material conflict in the evidence remains as to whether the basis of the search was a *Terry* frisk for weapons or a response to the alleged K-9 alert on the vehicle. Testimony cannot substitute for a finding in this instance. *See Lang*, 309 N.C. at 520-21, 308 S.E.2d at 321; *Bartlett*, 368 N.C. at 312, 776 S.E.2d at 674. *See also Jordan*, 385 N.C. at 757-58, 898 S.E.2d at 283 ("[W]e cannot infer the necessary findings under *Bartlett* because there is a material conflict in the evidence that the trial court must resolve.").

### 3. *Findings of Fact 33 and 36*

Another conflict in the evidence exists regarding whether the K-9 alerted for the presence of narcotics. Finding 33 describes Detective Peoples' testimony that he was informed the K-9 alerted and Finding 36 recites Sergeant Basinger's testimony about how the K-9 sniff took place:

> (33) That at the 9-minute-and-14-second mark Detective Peoples could clearly be heard on his bodycam footage saying, "positive". When asked what this meant, he said that it was a question to the K-9 officer to see why he was being summoned to the vehicle. It was at that point that he was informed that the K-9 had alerted on to the possibility of illegal substances in the defendant's vehicle;

> (36) That Detective Basinger testified Kantor did not receive any command to sniff . . . He said that the K-9 circled the vehicle and first alerted to suspected illegal substances between the front and

> rear door seam on the driver's side of the vehicle . . . He indicated that he considered it an alert because Kantor had a change of demeanor. They continued the search and K-9 Kantor had a complete alert on the gas lid at the back left side of the defendant's vehicle . . .

Defendant argues there is no competent evidence showing the K-9 alerted, and as such there was no probable cause to search Defendant's vehicle; nor were there grounds to search Defendant, even if the K-9 had alerted, because probable cause to search a vehicle does not create probable cause to search its occupants.

Whether the K-9 alerted for drugs on the vehicle is critical to the inquiry of whether the officers had probable cause to search the vehicle. *See State v. Degraphenreed*, 261 N.C. App. 235, 246, 820 S.E.2d 331, 338 (2018) ("A positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts.") (citation omitted). Testimony and body camera footage introduced at the suppression hearing showed Detective Peoples bending over and waving something near the rear tire by the gas lid where the K-9 is subsequently alleged to have detected drugs. Detective Peoples testified there was "absolutely no[]" reason for him to have been waving or rubbing anything against the tire, and despite seeing himself do so on the footage, could not recall why he had bent over or what he was doing at the time. We note that no illegal substances were found at or near the source of the K-9's alleged alert. Furthermore, the body camera footage introduced at the suppression hearing was absent of any footage of the K-9 performing its trained alert.

Ultimately, there is no finding in the Record resolving the conflict surrounding the alleged K-9 alert. Finding 33 provides Detective Peoples' testimony that he was informed of an alert, and Finding 36 provides Sergeant Basinger's testimony describing the K-9 sniff and alert. This witness testimony cannot substitute for a finding by the trial court that the K-9 alerted. *See Bartlett*, 368 N.C. at 312, 776 S.E.2d at 674; *Huffman*, 194 N.C. App. at 359, 669 S.E.2d at 793.

B. *Conclusions of Law*

Defendant also challenges the trial court's Conclusion of Law 2 as applying the wrong legal standard and unsupported by the Findings. We review conclusions of law de novo. *See Fernandez*, 346 N.C. at 11, 484 S.E.2d at 357. Conclusion of Law 2 concerns the basis for both the search of Defendant's person and the vehicle:

> (2) That based on the positive alert by K-9 Kantor, the officers had reason to search both the person and the vehicle of the defendant.

The Fourth Amendment to the United States Constitution protects the people from "unreasonable searches and seizures." U.S. CONST. amend. IV. "Generally, warrantless searches are not allowed absent probable cause and exigent circumstances," *State v. Harper*, 158 N.C. App. 595, 602, 582 S.E.2d 62, 67, *disc. review denied*, 357 N.C. 509, 509, 588 S.E.2d 372, 373 (2003), and a warrant may not be issued without probable cause. U.S. CONST. amend. IV. Our state constitution likewise has adopted this same standard. *See* N.C. CONST. art. I § 20.

The warrantless search of a vehicle is permissible if based on probable cause. *State v. Guerrero*, 292 N.C. App. 337, 341, 897 S.E.2d 534, 537 (2024) ("It is a well-established rule that a search warrant is not required before a lawful search based on probable cause of a motor vehicle in a public roadway . . . may take place.") (alteration in original) (citation and quotation marks omitted). Thus, the standard for assessing the legality of the search of Defendant's vehicle is whether the officers had probable cause. The trial court, however, concluded only that the officers had "reason" to conduct the search. We note that, in its Conclusion of Law 1, the trial court properly concluded the officers had "probable cause" to stop the vehicle for speeding, but Conclusion of Law 2 does not use the same "probable cause" language; Conclusion of Law 2 only concludes the officers had "reason" to conduct both searches.

Furthermore, even if the trial court properly concluded the K-9 sniff gave probable cause to search the vehicle, it could not have given probable cause to search Defendant's person.

> "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be."

*Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 342 (1979). *See also State v. Malunda*, 230 N.C. App. 355, 360, 749 S.E.2d 280, 284 (2013) (probable cause to search vehicle when officers smelled marijuana did not amount to probable cause to

search passenger in that vehicle) and *Degraphenreed*, 261 N.C. App. at 246, 820 S.E.2d at 338 (positive K-9 sniff gives probable cause to search only the area or item where the K-9 alerts).

Remand is appropriate where the trial court has applied the wrong legal standard. *See State v. Williams*, 195 N.C. App. 554, 561, 673 S.E.2d 394, 398-99 (2009) ("Where . . . the trial court mistakenly applies an incorrect legal standard in determining whether a defendant's constitutional rights have been violated for purposes of a motion to suppress, the appellate court must remand the matter to the trial court for a 'redetermination' under the proper standard."). We note also that, the Findings, as they currently exist in the Order, cannot support the trial court's ultimate Conclusion there was "reason" *or* probable cause to conduct either search based on the alleged K-9 alert because, as discussed above, there was no finding that the K-9 alerted.

Thus, where the trial court did not apply the probable cause standard for either search, the trial court's denial of the Motion to Suppress was entered upon an improper legal standard. Therefore, the trial court's Order is not supported by its Findings of Fact or Conclusions of Law. Consequently, we vacate the trial court's Order denying the Motion to Suppress and the Judgment subsequently entered and remand this matter to the trial court for new findings and application of the correct legal standard to the evidence. *See State v. McKinney*, 361 N.C. 53, 65, 637 S.E.2d 868, 876 (2006) (remanding to "afford the trial court an opportunity to evaluate"

a motion to suppress "using the appropriate legal standard."). We express no opinion on the ultimate merits. *See id.*

Furthermore, because the Judgment was imposed as part of a plea agreement, the plea agreement must be set aside in its entirety, and the parties may either agree to a new plea agreement or the matter should proceed to trial on the original charges in the indictments. *See, e.g., State v. Rico*, 218 N.C. App. 109, 122, 720 S.E.2d 801, 809 (Steelman, J., dissenting) (concluding judgment should be vacated, guilty plea set aside, and the case remanded for disposition of original charges where trial court erroneously imposed aggravated sentence based solely on the defendant's guilty plea and stipulation as to aggravating factor), *rev'd per curiam for reasons stated in dissent*, 366 N.C. 327, 327, 734 S.E.2d 571, 571 (2012).

## Conclusion

Accordingly, for the foregoing reasons, we vacate the Judgment against Defendant and set aside the plea agreement in its entirety. We remand to the trial court for new proceedings on Defendant's Motion to Suppress, including for findings of fact resolving disputes in the evidence and conclusions of law and, if necessary, to proceed to trial. We further note: "if the judge who conducted the hearing is not available to enter a new order on remand, a new evidentiary hearing on the motion to suppress is required[.]" *State v. Swain*, 276 N.C. App. 394, 399, 857 S.E.2d 724, 727 (2021).

VACATED AND REMANDED.

Judge STROUD concurs.  Judge GORE concurs in the result only.