IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-268

 Filed: 6 February 2018

Onslow County, Nos. 15 CRS 2277, 16 CRS 2762, 2957–68

STATE OF NORTH CAROLINA

 v.

JAMES H. TERRELL, JR.

 Appeal by defendant from judgment entered 17 November 2016 by Judge

Beecher R. Gray in Onslow County Superior Court. Heard in the Court of Appeals 6

September 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth J.
 Weese, for the State.

 Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for
 defendant-appellant.

 ELMORE, Judge.

 James H. Terrell, Jr. (defendant) appeals from a judgment entered after a jury

convicted him of possessing a photographic image from secretly peeping, second-

degree sexual exploitation of a minor, and twelve counts of third-degree sexual

exploitation of a minor. This case presents the issue of how to apply the private-

search doctrine to a follow-up police search for one potential contraband image among

several other non-incriminating images stored on an electronic storage device. Or,

put another way, to what extent the private-search doctrine authorizes police to
 STATE V. TERRELL

 Opinion of the Court

conduct, without a warrant, a follow-up search for digital data on a privately searched

electronic storage device.

 Defendant’s long-term girlfriend, Jessica Jones, opened defendant’s briefcase

when he was at work in order to search for information about his housekeeper in the

Philippines while he was working overseas on a prior military contract job. Among

employment papers and other personal effects, she found three USB flash drives

(hereinafter “thumb drives”). Jones plugged each thumb drive into a computer. One

of those thumb drives contained data. Jones clicked through its multiple digital file

folders and subfolders until she found one subfolder containing images. After

scrolling through several non-incriminating images, she saw one image of her nine-

year-old granddaughter sleeping without a shirt. Jones believed the image was

inappropriate, summoned authorities, and surrendered the thumb drive, which was

secured in an evidence locker.

 Later, an officer conducted a warrantless search through the images on the

thumb drive to locate the granddaughter image. But during his follow-up search, the

officer allegedly discovered images of other partially or fully nude minors that Jones

never viewed. Using this information to support his warrant application, the officer

obtained a search warrant to forensically examine the thumb drive’s contents. The

executed search warrant yielded twelve incriminating images located in a different

subfolder than the granddaughter image.

 -2-
 STATE V. TERRELL

 Opinion of the Court

 Defendant moved to suppress the contents of the thumb drive. He alleged that

the officer had conducted an illegal warrantless search. He further sought to

suppress the images recovered during the forensic examination under the search

warrant as being fruit of the previous unlawful search. Defendant’s motion was

denied. The trial court determined that Jones’s private viewing of the thumb drive

effectively frustrated defendant’s expectation of privacy in its contents and, thus, the

officer’s warrantless search was lawful under the private-search exception to the

warrant requirement and did not violate defendant’s Fourth Amendment rights.

 On appeal, defendant contends the trial court erred by denying his motion to

suppress the thumb drive’s contents because the search warrant executed was based

on illegally obtained evidence from the officer’s warrantless search. He contends the

trial court erred by concluding that Jones’s prior search through the thumb drive

effectively frustrated his expectation of privacy in its entire contents, thereby

authorizing the officer to search, without a warrant, through all of the images on that

device. He further contends the trial court’s finding that the officer viewed

incriminating images that Jones never viewed necessarily establishes that his

subsequent search unconstitutionally exceeded the scope of Jones’s earlier one.

 We ultimately hold that the trial court reversibly erred by concluding that the

officer’s warrantless search was lawful under the private-search doctrine and,

therefore, did not violate defendant’s Fourth Amendment rights. However, because

 -3-
 STATE V. TERRELL

 Opinion of the Court

the record is insufficient for us to determine whether the trial court would have

determined that the search warrant executed was supported by probable cause

without the tainted evidence obtained during the officer’s unlawful search, we

remand this matter to the trial court to determine the validity of the search warrant.

 I. Background

 During their long-term relationship, James H. Terrell, Jr. (defendant) and

Jessica Jones had lived together for over ten years and had two children together.

Jones also had a daughter from another relationship, Cindy, who has a daughter,

Sandy.1

 Defendant served in the United States Marine Corps and after he left service,

he began worked various overseas military contractor jobs. When he returned from

one such job in the Philippines in February 2013, he resumed living with Jones until

January 2014.

 On 13 January 2014, while defendant was at work, Jones searched his

belongings for information about his housekeeper in the Philippines. She opened his

briefcase and discovered, among employment paperwork and other personal effects,

that it contained three USB thumb drives.

 Jones plugged each thumb drive into a home computer. Two of the thumb

drives were blank, but the third thumb drive, which was purple in color, contained

1 Pseudonyms are used to protect identities.

 -4-
 STATE V. TERRELL

 Opinion of the Court

data. On the purple thumb drive, Jones found a subfolder containing images and

scrolled through various non-incriminating images until she discovered an image of

her nine-year-old granddaughter, Sandy, that was taken the day after Thanksgiving.

In the image, Sandy was sleeping, partially nude from the waist up with her breasts

exposed (hereinafter “the granddaughter image”). Once Jones saw the

granddaughter image, she stopped scrolling through the images and unplugged the

thumb drive. Jones sought counsel from her preacher, who recommended contacting

authorities. Jones also informed her daughter, Cindy, who is Sandy’s mother, and

Cindy expressed her desire to press charges.

 That evening, Jones and Cindy brought the purple thumb drive to the Onslow

County Sheriff’s Department and reported to Detective Lucinda Hernandez that it

contained the granddaughter image. Detective Hernandez did not ask to see the

granddaughter image or open the thumb drive to view it but secured the thumb drive

in an evidence locker.

 The next day, Detective Eric Bailey was assigned to the case. He reviewed

Detective Hernandez’s report, and then interviewed Jones and Cindy, who also

reported to him that the thumb drive contained the granddaughter image. After the

interview, Detective Bailey decided to examine the thumb drive to verify their report.

At Detective Bailey’s request, the thumb drive was removed from the evidence locker,

and a crime scene investigation (CSI) technician with the sheriff’s department

 -5-
 STATE V. TERRELL

 Opinion of the Court

plugged it into a computer. During Detective Bailey’s search for the granddaughter

image, he scrolled through several non-incriminating images and allegedly saw

images of other fully or partially nude minor females posing in sexual positions,

images that Jones neither observed nor reported.

 On 5 February 2014, Detective Bailey applied for a warrant to search, inter

alia, the purple thumb drive for “contraband images of child pornography and

evidence of additional victims and crimes.” In his application, Detective Bailey

alleged that Jones reported that she saw the granddaughter image on defendant’s

purple thumb drive, that Jones reported her other daughter “several years ago”

alleged that defendant “touched [her] down there,” and that Jones also reported she

found a floppy disk in the bed of defendant’s truck about fifteen years ago that

contained images of child pornography. According to Detective Bailey, an agent with

the State Bureau of Investigation (SBI) refused to conduct a “forensic evaluation [of

the thumb drive] based on [that] search warrant” and “asked [him] to put additional

information in the search warrant.”

 On 5 May 2014, Detective Bailey applied for another search warrant, this time

adding allegations that he personally reviewed the thumb drive and saw “several

partially nude photographs of [the granddaughter]” as described by Jones, and that

he also observed “several fully nude photographs of an unknown child standing beside

and [sic] adult female in various sexual positions.”

 -6-
 STATE V. TERRELL

 Opinion of the Court

 The SBI agent executing the search warrant forensically examined several

electronic devices using complex forensic software that creates a mirror image of their

contents. The forensic examination of the thumb drive yielded twelve other

incriminating images located in a different subfolder than the granddaughter image.

Ten of those images had been previously deleted, and therefore would not have been

observable during Jones’s or Detective Bailey’s searches, but were extractable using

a computer forensic tool.

 Defendant was indicted for possession of a photographic image from secretly

peeping for the granddaughter image, four counts of second-degree sexual

exploitation of a minor, and twelve counts of third-degree sexual exploitation of a

minor based on the twelve images recovered from the forensic examination. Three of

the second-degree sexual exploitation charges were dropped but the remaining

charges proceeded to trial.

 Before trial, defendant moved to suppress the contents of the thumb drive,

arguing that the executed search warrant was based on evidence illegally acquired

during Detective Bailey’s unlawful warrantless search. At the suppression hearing,

defendant argued that Detective Bailey’s thumb drive search violated his federal and

state constitutional rights to be free from unreasonable searches. He further argued

that Detective Bailey’s warrantless search was not exempted by the private-search

exception to the warrant requirement because it unconstitutionally exceeded the

 -7-
 STATE V. TERRELL

 Opinion of the Court

scope of Jones’s prior search. Defendant emphasized that Jones’s search revealed

only the granddaughter image, while Detective Bailey’s search revealed images of

other fully or partially nude minors that Jones never viewed. To satisfy its burden

to establish that the evidence obtained during Detective Bailey’s warrantless search

was lawful, the State called Jones and Detective Bailey to testify.

 According to Jones, when she plugged in the thumb drive, she opened various

“folders and sub-folders” that she “did not think . . . had a title.” She explained that

“the pictures were all in one folder and . . . the other folders [contained] movies.” After

opening the “one” image folder, she scrolled those images. Jones saw “images of adult

women and . . . children, but they were not inappropriate, meaning they were

clothed”; “pictures of a person that [defendant] alleged was his housekeeper over in

the Philippines”; images of an adult she recognized as defendant’s childhood friend,

some clothed and some partially clothed; and then she saw the granddaughter image.

Once she saw that image, Jones stopped scrolling through the images and unplugged

the thumb drive. According to Jones, she never saw any images of defendant; images

of her and defendant; nor images of nude minors, particularly no “images of a fully

naked young . . . female standing around adult women.” Jones testified she told

Detective Bailey that she “had discovered the image of [her] granddaughter lying in

bed and she’s partially unclothed” on the thumb drive.

 -8-
 STATE V. TERRELL

 Opinion of the Court

 According to Detective Bailey, after the thumb drive was plugged into the CSI

computer, he was “going through checking it to try to find the [granddaughter

image].” He explained that, while he was “scrolling through . . . there was a lot of

photos in there[,]” and he was “clicking trying to find exactly where [the] image [was]

located . . . .” Detective Bailey viewed “multiple images of adult females and also

[defendant] together clothed, nude, partially nude.” He then “continued [his] way

down” and “finally happened upon the photograph of the granddaughter.” He then

stated that during his search, he “observed other young females, prepubescent

females, unclothed, also some that were clothed.”

 The State presented no evidence describing the precise scope of either search

Jones or Detective Bailey conducted on the thumb drive. Neither testified to the exact

folder pathway they followed to arrive at the granddaughter image, identified which

folders or subfolders they opened or reviewed, nor identified which subfolder of

images they scrolled through to arrive at the granddaughter image.

 At the conclusion of the suppression hearing, the trial court rendered an oral

ruling denying defendant’s motion. It concluded that “there was a private party who

went into this [thumb drive] and, by doing so, . . . it frustrated the defendant’s

reasonable expectation of privacy as to the contents of that [thumb drive].” The trial

court continued: “[W]hen [Detective Bailey] went into that same [thumb drive] . . . to

confirm what had been stated to him, he found additional matters and he did so in a

 -9-
 STATE V. TERRELL

 Opinion of the Court

manner that was, perhaps, more thoroughly [sic] than the initial examination by Ms.

[Jones]. He ran into more images than what Ms. [Jones] ran into.” Thus, the trial

court determined, Detective Bailey’s warrantless search did not violate defendant’s

Fourth Amendment rights.

 At trial, the twelve images were admitted into evidence and a computer

forensic analyst published a mirror image copy of the thumb drive to the jury. The

initial Windows Explorer display screen of the thumb drive revealed multiple closed

digital file folders. According to the transcript, that initial screen revealed at least

the following parent folders (but likely more, since the witness displaying its content

to the jury was asked multiple times to “scroll down” to find certain folders): “bad

stuff,” “Terrell resume,” and “DI info.” Opening the “bad stuff” folder revealed at least

the following subfolders: “me,” “Swanee,” “red bone,” and “Cabaniia.” The evidence

showed that the granddaughter image was located in the “red bone” subfolder, while

the twelve other images were located in the “Cabaniia” subfolder.

 After the presentation of evidence, the jury convicted defendant of all charges

based on the granddaughter image and the twelve images recovered from the search

warrant executed on the thumb drive. The trial court sentenced defendant to twelve

consecutive terms of five to fifteen months in prison, and a term of twenty to eighty-

four months of imprisonment, to run concurrent with the last five-to-fifteen-month

 - 10 -
 STATE V. TERRELL

 Opinion of the Court

term. On 28 November 2016, the trial court entered its written order denying

defendant’s suppression motion. Defendant appeals.

 II. Standard of Review

 “The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.” State v. Jackson, 368 N.C. 75, 78,

772 S.E.2d 847, 849 (2015) (citation and quotation marks omitted). The trial court’s

legal conclusions “are fully reviewable on appeal.” State v. Hughes, 353 N.C. 200,

208, 539 S.E.2d 625, 631 (2000).

 III. Arguments

 Defendant contends the trial court erred by denying his motion to suppress the

contents of the thumb drive seized from the executed search warrant because it was

based on illegal evidence obtained during Detective Bailey’s unlawful search. He

contends the trial court erred by concluding Jones’s prior viewing of some images on

the thumb drive effectively frustrated his expectation of privacy in the entire device,

such that the private-search doctrine authorized Detective Bailey to search, without

a warrant, through all of its digital data. Defendant cites to United States v.

Jacobsen, 466 U.S. 109, 113–19, 104 S. Ct. 1652, 1656–59, 80 L. Ed. 2d 85 (1984)

(establishing the private-search exception to the warrant requirement and

instructing that the legality of a follow-up police search is limited by the degree it

 - 11 -
 STATE V. TERRELL

 Opinion of the Court

remains within the scope of the prior private search), to support his argument that

because the trial court’s findings establish that Detective Bailey’s warrantless search

exceeded the scope of Jones’s earlier one, it was unlawful.

 The State argues that the trial court properly determined that Detective

Bailey’s search was lawful under the private-search doctrine. The State contends

that Detective Bailey’s search was not unconstitutionally excessive in scope, since he

merely examined the thumb drive “more thoroughly” than did Jones, citing to our

decision in State v. Robinson, 187 N.C. App. 795, 798, 653 S.E.2d 889, 892 (2007)

(holding that an officer viewing all of the footage of a videotape did not exceed the

scope of a private search through only portions of the footage because the officer

merely examined the “same materials . . . more thoroughly than did the private

part[y]” (citations and internal quotation mark omitted)). The State further contends

that even if Detective Bailey’s search was conducted more thoroughly, it was not

unconstitutionally excessive in scope because he had “virtual certainty” what

contraband the thumb drive contained, citing to Jacobsen, 466 U.S. at 118–22, 104 S.

Ct. at 1659–61 (establishing the virtual-certainty requirement), and Rann v.

Atchison, 689 F.3d 832, 836–37 (7th Cir. 2012) (holding that an officer did not exceed

the scope of a private search by viewing more files on a memory card and zip drive

when officers were “substantially certain” those devices stored only child

pornography), cert. denied, 133 S. Ct. 672 (2012).

 - 12 -
 STATE V. TERRELL

 Opinion of the Court

 We conclude that our decision in Robinson concerning the extent to which a

private actor viewing portions of a videotape frustrates an individual’s expectation of

privacy in the entire videotape footage is simply inapplicable to searches for digital

data on electronic storage devices. We therefore decline to extend the container

analogy we applied to the videotape search in Robinson and hold a thumb drive

should not be viewed as a single container for Fourth Amendment purposes. In light

of this determination, we hold that the trial court erred by concluding that Jones’s

thumb drive search effectively frustrated defendant’s expectation of privacy in its

entire contents.

 We further hold that Detective Bailey’s warrantless search was not authorized

under the private-search doctrine, since the court’s findings establish that Detective

Bailey did not conduct his warrantless search with the requisite “virtual certainty”

required under Jacobsen that the thumb drive contained only contraband, or that his

inspection of its data would not reveal anything more than Jones already told him.

However, because the trial court’s order is insufficient for us to determine whether it

would conclude that excising from the warrant application the evidence illegally

obtained during Detective Bailey’s unlawful search would still supply probable cause

to issue the search warrant, we remand the matter to the trial court to make a

determination, in the first instance, as to whether the remaining allegations in

Detective Bailey’s warrant application would have been sufficient.

 - 13 -
 STATE V. TERRELL

 Opinion of the Court

 IV. Analysis

 “Both the United States and North Carolina Constitutions protect against

unreasonable searches . . . .” State v. Otto, 366 N.C. 134, 136, 726 S.E.2d 824, 827

(2012) (citing U.S. Const. amend. IV; N.C. Const. art. I, § 20). A warrantless police

search is presumptively unreasonable unless the State proves that search was

exempted from the warrant requirement. See Jacobsen, 466 U.S. at 114, 104 S. Ct.

at 1657 (“[W]arrantless searches of [personal] effects are presumptively

unreasonable.” (footnote omitted)); State v. Cooke, 306 N.C. 132, 135, 291 S.E.2d 618,

620 (1982) (“[W]hen the State seeks to admit evidence discovered by way of a

warrantless search in a criminal prosecution, it must first show how the former

intrusion was exempted from the general constitutional demand for a warrant.”

(citations omitted)). The private-search doctrine provides one such exemption from

the warrant requirement.

A. The Private-Search Doctrine

 Under the private-search doctrine, an officer may duplicate a private search,

without a warrant, in order to observe first-hand incriminating information a private

searcher has revealed to him. The rationale behind the doctrine is that Fourth

Amendment protection extends only to governmental action; “it is wholly inapplicable

‘to a search or seizure, even an unreasonable one, effected [solely] by a private

individual . . . .’ ” Jacobsen, 466 U.S. at 113, 104 S. Ct. at 1656 (quoting Walter v.

 - 14 -
 STATE V. TERRELL

 Opinion of the Court

United States, 447 U.S. 649, 662, 100 S. Ct. 2395, 2404, 65 L. Ed. 2d 410 (1980)

(Blackmun, J., dissenting)). Once an individual’s privacy interest in particular

information has been frustrated by a private actor, who then reveals that information

to police, the police may use that information, even if obtained without a warrant.

See id. at 117, 104 S. Ct. 1658 (explaining that the private-search doctrine “standard

follows from the analysis applicable when private parties reveal other kinds of private

information to authorities”); see also id. (“Once frustration of the original expectation

of privacy occurs, the Fourth Amendment does not prohibit governmental use of the

now nonprivate information.”). Thus, a duplicative police search exposing

information already revealed by a private searcher is not a “search” under the Fourth

Amendment, since it would intrude no existing privacy interest in that information.

 But where a warrantless police search uncovers previously unrevealed private

information, any additional privacy intrusion effected by that police search

constitutes a Fourth Amendment “search,” and police are therefore prohibited from

using that information under the private-search doctrine. See id. at 117–118, 104 S.

Ct. at 1658–59 (“[I]f the authorities use information with respect to which the

expectation of privacy has not already been frustrated[,]” “the authorities have not

relied on what is in effect a private search, and therefore presumptively violate the

Fourth Amendment if they act without a warrant.” (footnote omitted)). Thus, in

determining whether information acquired during a warrantless police search can be

 - 15 -
 STATE V. TERRELL

 Opinion of the Court

used under the private-search doctrine, “the legality of the governmental search must

be tested by the scope of the antecedent private search.” Id. at 116, 104 S. Ct. at 1658

(citation omitted).

 Additionally, “the Fourth Amendment’s ultimate touchstone is

‘reasonableness[.] . . .’ ” Brigham City, Utah v. Stuart, 547 U.S. 398, 398, 126 S. Ct.

1943, 1944, 164 L. Ed. 2d 650 (2006). “The reasonableness of an official invasion of

the citizen’s privacy must be appraised on the basis of the facts as they existed at the

time that invasion occurred.” Jacobsen, 466 U.S. at 115, 104 S. Ct. at 1657. Where

information revealed by the private searcher is hidden from plain view, the

reasonableness of a follow-up police search turns on whether the officer had “virtual

certainty” that the item to be searched contained “nothing else of significance” and

that his or her inspection of that item would not “tell him anything more than he

already had been told” by a private searcher. Id. at 119, 104 S. Ct. at 1659.

B. Frustration of Privacy in Electronic Storage Devices

 Defendant contends the trial court erred by concluding that Jones’s prior

viewing of the thumb drive effectively frustrated his expectation of privacy in its

entire contents and, therefore, Detective Bailey was authorized to search, without a

warrant, through all of its digital data without violating his Fourth Amendment

rights. The State retorts that this conclusion was proper, relying heavily on our

decision in State v. Robinson, 187 N.C. App. 795, 653 S.E.2d 889 (2007). See id. at

 - 16 -
 STATE V. TERRELL

 Opinion of the Court

798–99, 653 S.E.2d at 892 (analogizing a videotape search to a container search, and

holding that a private partial viewing of video footage from a videotape “opened the

container” to its entire contents, effectively frustrating the defendant’s expectation of

privacy in all of the videotape footage). We find the State’s authority unpersuasive

as applied to searches of digital data on electronic storage devices, and hold that

defendant retained an expectation of privacy in the information not revealed by

Jones’s search.

 An individual has “reasonable and substantial” privacy interests in the digital

information stored on a thumb drive. See State v. Ladd, ___ N.C. App. ___, ___, 782

S.E.2d 397, 403 (2016) (“Defendant’s privacy interests in the digital data stored on

these [external data] storage devices are both reasonable and substantial.”). While

this Court has applied the private-search doctrine to a police search of a privately

searched videotape, see Robinson, 187 N.C. App. at 798–99, 653 S.E.2d at 892

(holding that a private search through some footage of a videotape frustrated an

individual’s privacy interests in the entire videotape footage), North Carolina courts

have neither applied the private-search doctrine to a police search for digital data on

a privately searched electronic storage device, nor defined the precise scope of a

search for digital data on an electronic storage device, which bears directly on the

extent to which a private search through a thumb drive may frustrate an individual’s

privacy interests in all of its digital data.

 - 17 -
 STATE V. TERRELL

 Opinion of the Court

 At issue is whether we should extend our holding in Robinson, as the State

argues, treat the thumb drive as a single container for purposes of applying the

private-search doctrine, and hold that Jones’s prior search “opened the container” to

all of the thumb drive’s digital data, thereby authorizing Detective Bailey to conduct

a “more thorough” examination of the entire device. We decline to do so.

C. A Thumb Drive is not a Single Container

 In Robinson, the police viewed, without a warrant, the entire footage of a single

videotape after a private searcher viewed portions of the footage and revealed to

police that it showed the defendant engaging in sexual activities with two minors.

187 N.C. App. at 796, 653 S.E.2d at 891. The officer’s videotape search confirmed

what the private actor revealed to him—that the videotape contained footage of the

defendant engaging in sexual activities with the two minors. Id. On appeal, we

applied the private-search doctrine and addressed whether the officer’s search

through the entire videotape footage exceeded the permissible scope of the private

search through only portions of the footage. Id. at 797–99, 653 S.E.2d at 891–92.

 The Robinson panel recognized that North Carolina courts had not defined the

precise scope of a videotape search and turned to federal circuits courts of appeal for

guidance. We adopted the Fifth and Eleventh Circuits’ position that “ ‘the police do

not exceed the scope of a prior private search when they examine the same materials

. . . . more thoroughly than did the private parties.’ ” Id. at 798, 653 S.E.2d at 892

 - 18 -
 STATE V. TERRELL

 Opinion of the Court

(quoting United States v. Runyan, 275 F.3d 449, 464 (5th Cir. 2001); citing United

States v. Simpson, 904 F.2d 607, 610 (11th Cir. 1990)). We treated the videotape as

a container, analogized the videotape search to a container search, and concluded

that the private partial “viewing of the videotape effectively frustrated the

defendant’s expectation of privacy as to the contents of the [entire] videotape[.] . . .”

Id. at 798, 653 S.E.2d at 892. Thus, because the prior private “viewing ‘opened the

container’ of the videotape,” we held that “the subsequent [police] viewing of the

entire videotape was not outside the scope of [the private actor’s] initial ‘search.’ ” Id.

at 799, 653 S.E.2d at 892 (citing Runyan, 275 F.3d at 465).

 However, electronic storage devices are unlike videotapes, and a search of

digital data on a thumb drive is unlike viewing one continuous stream of video footage

on a videotape. The container analogy may appropriately apply to a videotape, since

its entire “contents” can be revealed by merely playing that videotape and inactively

observing its footage run until completion; a searcher need not further manipulate

the videotape to observe the entire video footage. Thus, the more-thoroughly-

searched principle may reasonably apply to a police viewing all of the video footage

of a partially viewed videotape. But there are analytically significant reasons to view

thumb drive searches differently.

 One thumb drive may store thousands of videos, and it may store vastly more

and different types of private information than one videotape. Data stored on a

 - 19 -
 STATE V. TERRELL

 Opinion of the Court

thumb drive may be concealed among an unpredictable number of closed digital file

folders, which may be further concealed within unpredictable layers of nested

subfolders. A thumb drive search that may require navigating through numerous

closed file folders and subfolders is significantly more invasive and complex than a

search of viewing one continuous stream of footage on a videotape. Based on a thumb

drive’s ever-expanding storage capacity, its potential to hold vastly more and distinct

types of private information, and the complexity involved in searches of its digital

data, we find Robinson and the reasoning underlying our decision in that case simply

inapplicable here. Accordingly, we decline to extend its container analogy to an

electronic storage device and decline to apply the “opened the container” approach to

authorize police to search through all of the digital data it may store.

 In reaching this decision, we are guided by the substantial privacy concerns

implicated in searches of digital data that the United States Supreme Court

expressed in Riley v. California, 134 S. Ct. 2473, 2485, 189 L. Ed. 2d 430 (2014)

(declining to extend the search-incident-to-arrest exception to police searches of

digital data on cell phones). In Riley, the Court expressly rejected the analogy that a

cell phone should be treated like a single container for Fourth Amendment purposes.

Id. at 2488–89. In addressing the United States’ argument that “a search of all data

stored on a cell phone is ‘materially indistinguishable’ from searches of . . . physical

items,” the Supreme Court stated:

 - 20 -
 STATE V. TERRELL

 Opinion of the Court

 That is like saying a ride on horseback is materially
 indistinguishable from a flight to the moon. Both are ways
 of getting from point A to point B, but little else justifies
 lumping them together. Modern cell phones, as a category,
 implicate privacy concerns far beyond those implicated by
 the search of a cigarette pack, a wallet, or a purse. A
 conclusion that inspecting the contents of an arrestee’s
 pockets works no substantial additional intrusion on
 privacy beyond the arrest itself may make sense as applied
 to physical items, but any extension of that reasoning to
 digital data has to rest on its own bottom.

Id.; see also id. at 2485 (“A search of the information on a cell phone bears little

resemblance to the type of brief physical search considered in [a prior case].”). Since

Riley was decided, this Court has relied on its guidance in rejecting the State’s

argument that a “GPS [device] should be viewed as a type of ‘digital container’ and

treated the same as an address book, a wallet, or a purse” in the search-incident-to-

arrest context. See State v. Clyburn, 240 N.C. App. 428, 435, 770 S.E.2d 689, 695

(2015) (holding that a search of the digital contents of a GPS was not a valid search

incident to arrest).

 While this is a private-search exception case, not a search-incident-to-arrest

exception case, Riley’s guidance that the nature of an electronic device greatly

increases privacy implications holds just as true, and it guides our decision in how

best to apply a doctrine originating from the search of a container limited by physical

realities to a search for digital data on an electronic storage device that is not. Cf.

United States v. Lichtenberger, 786 F.3d 478, 487 (6th Cir. 2015) (relying on Riley’s

 - 21 -
 STATE V. TERRELL

 Opinion of the Court

guidance in applying the private-search doctrine to a laptop search), aff’g, 19 F. Supp.

3d. 753 (N.D. Ohio 2014); see also United States v. Sparks, 806 F.3d 1323, 1336 (11th

Cir. 2015) (relying on Riley’s guidance in applying the private-search doctrine to a

cell phone search), cert. denied, Sparks v. United States, 136 S. Ct. 2009, and cert.

denied, Johnson v. United States, 137 S. Ct. 34 (2016).

 Accordingly, we decline to extend the container analogy we applied in Robinson

to searches of digital data on electronic storage devices. We hold that an electronic

storage device should not be viewed as a single container for Fourth Amendment

purposes. The trial court therefore erred by concluding that Jones’s thumb drive

search effectively frustrated defendant’s expectation of privacy in the contents of the

entire device. We turn now to whether the trial court’s findings support its conclusion

that Detective Bailey’s search remained within the permissible scope of Jones’s prior

search and whether it was reasonable under the circumstances, and was, therefore,

a valid warrantless search under the private-search doctrine.

D. Validity of the Thumb Drive Search Under the Private-Search Doctrine

 Defendant challenges the finding that “[i]n addition to the [granddaughter

image] Detective Bailey saw photographs of other nude or partially nude

prepubescent females posing in sexual positions.” (Emphasis added.) He contends

this finding necessarily establishes that Detective Bailey’s search unconstitutionally

exceeded the scope of Jones’s prior search because Jones never viewed those images

 - 22 -
 STATE V. TERRELL

 Opinion of the Court

and the granddaughter image was located in a different subfolder. The State

contends that even if Detective Bailey’s thumb drive search was “more thorough,” it

was not unconstitutionally excessive in scope under the private-search doctrine,

because Detective Bailey had “virtual certainty” what contraband it contained.

Because the private-search doctrine originated from an officer’s physical search of the

contents of a parcel box, which significantly differs from a digital search of data on

an electronic storage device, we turn to the material facts of Jacobsen and its

application of the private-search doctrine for guidance.

 In Jacobsen, a Federal Express (FedEx) employee opened a damaged parcel

package, a paper-wrapped cardboard box, which revealed that it contained crumpled

newspaper covering a closed tube made of duct tape. 466 U.S. at 111, 104 S. Ct. at

1655. FedEx employees removed the tube, cut it open, and discovered it contained

zip-lock bags of white powder. Id. They summoned authorities to review the contents

of the box, and replaced the plastic bags into the tube, and the tube and newspapers

back into the box. Id. The responding Drug Enforcement Administration (DEA)

agent saw that the repackaged box had a hole punched in its side and its top was

open. Id. He removed the tube from the box, saw that one end of it had been slit

open, removed the plastic bags from the tube, and then saw the white powder. Id.

He then removed a trace of the white powder and conducted a field test confirming it

was cocaine. Id. at 111–12, 104 S. Ct. at 1655.

 - 23 -
 STATE V. TERRELL

 Opinion of the Court

 The Court in Jacobsen addressed whether the DEA agent’s warrantless search

was valid under the Fourth Amendment. After articulating the private-search-

doctrine standard, the Court began applying that doctrine by defining the scope of

the FedEx employees’ initial private search and then testing it against the DEA

agent’s subsequent one, in order to determine the extent to which the DEA agent’s

search invaded additional privacy interests and thus exceeded the scope of the FedEx

employees’ search. Id. at 118–20, 122, 104 S. Ct. at 1659–60, 1661. The Court

explained that the FedEx employees’ initial search, and the resulting invasions of

privacy, “revealed that the package contained only one significant item, a suspicious

looking tape tube[,]” and that “[c]utting the end of the tube and extracting its contents

revealed a suspicious looking plastic bag of white powder.” Id. at 115, 104 S. Ct. at

1657. Thus, the Court determined that the DEA agent’s actions of removing the tube

from the box, removing the plastic bags from the tube, and observing the white

powder did not exceed the scope of the prior search, since “the removal of the plastic

bags from the tube and the agent’s visual inspection of their contents enabled the

agent to learn nothing that had not previously been learned during the private

search.” Id. at 120, 104 S. Ct. at 1660 (footnote omitted). Thus, “[i]t infringed no

legitimate expectation of privacy and hence was not a ‘search’ within the meaning of

the Fourth Amendment.” Id.

 - 24 -
 STATE V. TERRELL

 Opinion of the Court

 In analyzing the reasonableness of the DEA’s warrantless search in light of

what he knew from the FedEx employees’ prior search, the Court explained that

“[w]hen the first [DEA] agent on the scene initially saw the package, he knew it

contained nothing of significance except a tube containing plastic bags and,

ultimately, white powder.” Id. at 118, 104 S. Ct. at 1659. The Court further

determined that “[e]ven if the powder was not itself in ‘plain view’ because it was still

enclosed in so many containers and covered with papers,” the DEA agent was

authorized to search the contents of the box because “there was a virtual certainty

that nothing else of significance was in the package and that a manual inspection of

the tube and its contents would not tell [the DEA agent] anything more than he had

already been told.” Id. at 119–20, 104 S. Ct. at 1659 (emphasis added).

 Accordingly, under Jacobsen’s beyond-the-scope test, judicial review centers on

defining the precise scopes of both searches in order to determine whether a follow-

up police search further invaded privacy interests and thus exceeded the scope of the

prior private search. Further, under Jacobsen’s virtual-certainty requirement, where

a private search does not leave incriminating evidence in plain view, judicial review

of the reasonableness of a follow-up police search must be tested by the degree to

which that officer had “virtual certainty” the privately searched item contained

“nothing else of significance” other than the now non-private information, and that

 - 25 -
 STATE V. TERRELL

 Opinion of the Court

his inspection of that item “would not tell him anything more than” what the private

searcher already told him.

 Here, the trial court’s only factual findings concerning the scope of both

searches established the following:

 3. . . . [Jones] inserted the purple flash drive into a shared
 Apple computer and discovered, among other visual
 representations, a picture of her granddaughter, . . . who
 appeared to be asleep and who was nude from the waist up
 with breasts displayed. . . .

 ....

 6. Following his discussion with . . . [Jones], Detective
 Bailey went to the CSI Unit to confirm on the purple flash
 drive what he had been told by [Jones]. . . . The CSI
 technician placed the purple flash drive into CSI’s computer
 and selected the folder that had been identified by [Jones]
 as containing the . . . granddaughter [image]. This viewing
 in the CSI Unit confirmed what . . . [Jones] had told
 Detective Bailey that she had discovered on the flash drive.
 In addition to the [granddaughter image] Detective Bailey
 saw photographs of other nude or partially nude
 prepubescent females posing in sexual positions.

(Emphasis added.) Based on these findings, the trial court determined that

“Detective Bailey’s initial search and examination of the purple thumb drive in the

CSI Unit did not exceed the scope of the private, prior search done by [Jones], but

could have been more thorough.”

 Jacobsen instructs that “[t]he additional invasions of respondents’ privacy by

the Government agent must be tested by the degree to which they exceeded the scope

 - 26 -
 STATE V. TERRELL

 Opinion of the Court

of the private search.” 466 U.S. at 115, 104 S. Ct. 1657. Thus, the trial court should

have made detailed findings on the exact scope of both Jones’s and Detective Bailey’s

searches of the thumb drive’s contents, in order to determine precisely the extent to

which Detective Bailey’s search may have exceeded Jones’s earlier one. However, the

State never presented any evidence, see State v. Romano, 369 N.C. 678, 800 S.E.2d

644, 654 (2017) (placing the burden on the State to prove there was no state action

when a nurse drew the defendant’s blood, or “that the seizure of the blood was not an

act of the State and thus, was not subject to the Fourth Amendment’s search and

seizure analysis”), and the trial court never made any findings establishing exactly

what folder(s) and/or subfolder(s) Jones or Detective Bailey searched. Nor did the

trial court’s findings describe what “other visual representations” Jones viewed, or

whether Detective Bailey only viewed those particular images.

 Although the trial court found that Detective Bailey viewed images in a folder

Jones identified as containing the granddaughter image, it did not explore whether

the images of partially or fully nude minors Detective Bailey allegedly viewed were

located in another subfolder of images other than that which Jones searched. To the

extent that they were, those images were not admissible under the private-search

doctrine. Cf. United States v. Kinney, 953 F.2d 863, 866 (4th Cir. 1992) (holding drug

evidence found during a follow-up police search of a closet inadmissible where the

private search revealed only guns: “This phase of the search cannot be supported by

 - 27 -
 STATE V. TERRELL

 Opinion of the Court

Akers’ prior private search because the fruits of [the officer’s] search, the white

powder and drug paraphernalia, were never discovered by Akers.”).

 Ordinarily, “ ‘when the trial court fails to make findings of fact sufficient to

allow the reviewing court to apply the correct legal standard, it is necessary to

remand the case to the trial court.’ ” State v. Ingram, 242 N.C. App. 173, 180, 774

S.E.2d 433, 440 (2015), disc. rev. denied, writ denied, 369 N.C. 195, 791 S.E.2d 677

(2016) (quoting State v. Salinas, 366 N.C. 119, 124, 729 S.E.2d 63, 67 (2012)). “In

such a situation, ‘remand is necessary because it is the trial court that ‘is entrusted

with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find

the facts, and, then based upon those findings, render a legal decision, in the first

instance, as to whether or not a constitutional violation of some kind has occurred.’ ”

Ingram, 242 N.C. App. at 180, 774 S.E.2d at 440 (quoting Salinas, 366 N.C. at 124,

729 S.E.2d at 67). However, remand is not required where “there are no material

conflicts in the evidence” and “the superior court’s order . . . contain[s] sufficient

findings of fact to which this Court can apply the [applicable legal] standard.”

Salinas, 366 N.C. at 124, 729 S.E.2d at 67; see also Ladd, ___ N.C. App. at ___, 782

S.E.2d at 403–04 (declining to remand for additional findings where there was no

“conflicting evidence for the trial court to adjudicate” and the facts were “sufficient

for our de novo review of the trial court’s conclusions”).

 - 28 -
 STATE V. TERRELL

 Opinion of the Court

 After carefully considering the suppression hearing evidence, we conclude that

there were no material evidentiary conflicts and that the trial court’s findings are

sufficient for our de novo review of its ultimate conclusion that Detective Bailey’s

warrantless search did not violate defendant’s Fourth Amendment rights. We

conclude that findings on the precise scope of both searches are immaterial in this

particular case, in light of the other findings establishing that Jacobsen’s virtual-

certainty requirement was not satisfied and, therefore, Detective Bailey’s search was

unauthorized under the private-search doctrine. Cf. Lichtenberger, 786 F.3d at 490

(concluding that an officer’s lack of “virtual certainty” he viewed the same child

pornography images a private searcher viewed on the defendant’s laptop dispositively

established that his search was unconstitutional under the private-search doctrine).

 Jacobsen further instructs that because Jones’s prior search did not leave

incriminating evidence in plain view, judicial review centers on whether Detective

Bailey had “virtual certainty that nothing else of significance [except for the

granddaughter image that Jones revealed to him] was in the [thumb drive] and that

a[n] . . . inspection of the [thumb drive] and its [digital data] would not tell him

anything more than he already had been told.” 466 U.S. at 119, 104 S. Ct. 1659; see

also id. at 120 n.17, 104 S. Ct. at 1660 n.17 (noting the “significant . . . facts” that “the

container could no longer support any expectation of privacy” and “it was virtually

certain that it contained nothing but contraband” (emphasis added)). This virtual-

 - 29 -
 STATE V. TERRELL

 Opinion of the Court

certainty requirement limits unfettered governmental searching through all of the

digital data stored on an electronic storage device that is not known to contain only

contraband.

 Here, neither the State’s evidence, nor the trial court’s findings, established

that Detective Bailey proceeded with any certainty, much less the virtual certainty

required, that the thumb drive contained only the potential contraband that Jones

had reported, nor that Detective Bailey’s inspection of its contents would not reveal

anything more than what Jones had told him. Rather, the findings establish that the

only defining characteristic of the thumb drive was its purple color, which reveals

nothing about the nature of its digital contents, and that Detective Bailey knew the

thumb drive contained “other visual representations” in addition to the one

granddaughter image that was not obviously child pornography. According to Jones,

those other representations were images of fully clothed adult women and children;

defendant’s housekeeper; and defendant’s childhood friend as an adult, posing clothed

and partially clothed. The trial court’s findings establish that Detective Bailey did

not search the thumb drive with the same level of “virtual certainty” contemplated

by Jacobsen that the thumb drive only contained child pornography contraband, or

that his inspection of its digital contents would not reveal private information that

Jones had not already revealed to him.

 - 30 -
 STATE V. TERRELL

 Opinion of the Court

 In urging us to reach a different result, the State cites to our decision in

Robinson and two other federal circuit courts of appeal cases to support its position

that Detective Bailey’s search did not materially exceed the scope of Jones’s prior one

because he merely examined the thumb drive more thoroughly. Those cases are

distinguishable because the officers in those cases could be virtually certain the

devices contained contraband.

 In Robinson, based on the now non-private information revealed by the private

searcher that portions of the videotape showed the defendant engaging in sexual

activity with two minors, see id. at 796, 653 S.E.2d at 891, the officer could have

virtual certainty the videotape contained only contraband and that his viewing of the

entire footage would not reveal anything further. Here, contrarily, the only now non-

private information Jones’s search revealed was that the thumb drive contained,

among several other images, only one potential contraband image, which was not

obviously child pornography. The evidence showed that the thumb drive contained

various folders and subfolders storing different types of private digital data and that

the granddaughter image was stored in one subfolder among numerous other non-

incriminating images. Unlike the officer in Robinson, Detective Bailey did not have

the same sort of certainty that the thumb drive only contained contraband, or that

his search would not reveal anything more than what Jones had reported. The State’s

other authority is similarly distinguishable. See Runyan, 275 F.3d at 464 (holding

 - 31 -
 STATE V. TERRELL

 Opinion of the Court

that police did not exceed the scope of a private search by examining more files on

partially searched computer disks that a private searcher revealed contained child

pornography); Rann, 689 F.3d at 836–37 (holding that police did not exceed the scope

of a private search by examining more images on a memory card and zip drive that

the police “could be substantially certain” contained child pornography based on the

private searchers’ reports).

 Moreover, while the private-search doctrine “does not prohibit governmental

use of . . . now nonprivate information[,]” it prohibits “use [of] information with

respect to which the expectation of privacy has not already been frustrated.”

Jacobsen, 466 U.S. at 117, 104 S. Ct. at 1658–59. The trial court’s findings establish

that the only “now non-private information” Jones’s search revealed was that the

thumb drive contained only one potentially incriminating image of her

granddaughter sleeping without a shirt. Because Jones’s search never revealed that

the thumb drive contained child pornography images, the private-search doctrine

alone could not have authorized Detective Bailey to use that information for his

warrant application.

 Under the Fourth Amendment’s reasonableness inquiry, “ ‘[w]e must balance

the nature and quality of the intrusion on the individual’s Fourth Amendment

interests against the importance of the governmental interests alleged to justify the

intrusion.’ ” State v. Grice, 367 N.C. 753, 762, 767 S.E.2d 312, 319 (2015) (quoting

 - 32 -
 STATE V. TERRELL

 Opinion of the Court

Jacobsen, 466 U.S. at 125, 104 S. Ct. at 1662 (alteration in original) (citation

omitted)). The suppression evidence showed that Detective Bailey’s search involved

opening multiple closed folders and subfolders and scrolling through various non-

incriminating files in search of one potential contraband image that was not obviously

child pornography or overtly sexual in nature. The governmental interest alleged to

justify the private-search exception to the warrant requirement was that of “merely

avoiding the risk of a flaw in the [private searcher’s] recollection,” Jacobsen, 466 U.S.

at 119, 104 S. Ct. at 1659, which carries little weight when balanced against the

immense privacy interests at stake in the thumb drive search here, see Riley, 134 S.

Ct. at 2488–91. Further, no risks supported an immediate search based on evidence

preservation; the thumb drive was stored in an evidence locker. And thumb drives

present no cognizable harm to police. Id. at 2485 (“Digital data stored on a cell phone

cannot itself be used as a weapon. . . .”).

 “[T]he ‘prime purpose’ of the [exclusionary] rule, if not the sole one, ‘is to deter

future unlawful police conduct.’ ” United States v. Janis, 428 U.S. 433, 446, 96 S. Ct.

3021, 3028, 49 L. Ed. 2d 1046 (1976) (citation omitted). “A ruling admitting evidence

in a criminal trial . . . has the necessary effect of legitimizing the conduct which

produced the evidence, while an application of the exclusionary rule withholds the

constitutional imprimatur.” Terry v. Ohio, 392 U.S. 1, 13, 88 S. Ct. 1868, 1875, 20 L.

Ed. 2d 889 (1968). To hold that the evidence discovered during Detective Bailey’s

 - 33 -
 STATE V. TERRELL

 Opinion of the Court

warrantless thumb drive search was admissible under the private-search doctrine

may authorize unfettered police searching through all of the digital data on an even

more sophisticated electronic device that may contain greater quantities of distinct

items of private information based merely on a private searcher viewing and

revealing to police only one potentially incriminating file on that device. We therefore

hold this evidence was inadmissible under the private-search doctrine and that

Detective Bailey was prohibited from using it to support his warrant application.

 In summary, although the trial court failed to make adequate factual findings

concerning the exact scope of Jones’s and Detective Bailey’s searches through the

thumb drive, its findings establish that Detective Bailey did not conduct his search

with the requisite level of “virtual certainty” that the thumb drive contained only

contraband or that his inspection of its contents would not reveal anything more than

he already learned from Jones. Therefore, neither was Detective Bailey’s warrantless

thumb drive search authorized under the private-search doctrine, nor was he able to

use the evidence he obtained during that search to support his warrant application.

We thus hold that the trial court erred by concluding that Detective Bailey’s

warrantless search did not violate defendant’s Fourth Amendment rights.

D. Probable Cause to Issue the Search Warrant

 Defendant next argues that without the illegally acquired information from

Detective Bailey’s search—that the thumb drive contained other images of minors

 - 34 -
 STATE V. TERRELL

 Opinion of the Court

posing in sexual positions—his warrant application failed to establish probable cause

to issue the search warrant executed on the thumb drive that yielded the twelve

incriminating images underlying his second- and third-degree sexual exploitation of

a minor convictions. The State does not address the merits of this argument but

contends that, because the evidence obtained during Detective Bailey’s warrantless

search was lawfully acquired pursuant to the private-search doctrine, the search

warrant issued was valid.

 “The ultimate inquiry on a motion to suppress evidence
 seized pursuant to a warrant is not whether the underlying
 affidavit contained allegations based on illegally obtained
 evidence, but whether, putting aside all tainted
 allegations, the independent and lawful information stated
 in the affidavit suffices to show probable cause.”

State v. McKinney, 361 N.C. 53, 59, 637 S.E.2d 868, 872 (2006) (emphasis omitted)

(quoting United States v. Giordano, 416 U.S. 505, 554–55, 94 S. Ct. 1820, 40 L. Ed.

2d 341 (1974) (Powell, J., concurring in part, dissenting in part) (citation omitted)).

If excising illegally obtained information from a warrant application would fail to

supply probable cause to issue the search warrant, all evidence obtained from its

execution must be suppressed as tainted fruit. See, e.g., McKinney, 361 N.C. at 58,

637 S.E.2d at 872 (citations omitted).

 “The ‘common-sense, practical question’ of whether probable cause exists must

be determined by applying a ‘totality of the circumstances’ test.” State v. Benters, 367

N.C. 660, 664, 766 S.E.2d 593, 597–98 (2014) (quoting Illinois v. Gates, 462 U.S. 213,

 - 35 -
 STATE V. TERRELL

 Opinion of the Court

230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527, 543 (1983), and citing State v. Arrington,

311 N.C. 633, 637, 641, 319 S.E.2d 254, 257 (1984)). Thus,

 “[t]he task of the issuing magistrate is simply to make a
 practical, common-sense decision whether, given all the
 circumstances set forth in the affidavit before him,
 including the ‘veracity’ and ‘basis of knowledge’ of persons
 supplying hearsay information, there is a fair probability
 that contraband or evidence of a crime will be found in a
 particular place. And the duty of a reviewing court is
 simply to ensure that the magistrate had a ‘substantial
 basis for . . . conclud[ing]’ that probable cause existed.”

Id. at 664, 766 S.E.2d at 597–98 (emphasis added) (quoting Gates, 462 U.S. at 238–

39, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548 (third and fourth alterations in original),

as quoted in State v. Arrington, 311 N.C. 633, 638, 319 S.E.2d 254, 257–58 (1984)).

 Striking the information Detective Bailey acquired during his warrantless

search—that the thumb drive contained “several fully nude photographs of an

unknown child standing beside and [sic] adult female in various sexual positions”—

all that remained to provide a “fair probability that contraband” would be found in

the thumb drive, other than Jones’s allegations concerning two incidents involving

defendant in 2001, is Detective Bailey’s allegation that Jones reported the thumb

drive “contained pictures of [defendant] and other women engaged in sexual

activities”; “pictures of them in her home[ ]”; and “pictures of her 9 year old

granddaughter . . . in bed[,]” where she “appeared to be sleeping and she was exposed

(Nude) from the waist up.”

 - 36 -
 STATE V. TERRELL

 Opinion of the Court

 However, as defendant concedes, because the trial court determined that the

evidence acquired by Detective Bailey’s warrantless search was lawful under the

private-search doctrine, the trial court never determined whether striking that

information from his application would still supply probable cause to issue the search

warrant. Further, the trial court’s order contains no findings on the issue of whether

it would have found the evidence seized pursuant to the warrant admissible absent

the tainted allegations acquired by Detective Bailey’s unlawful thumb drive search.

In such a situation, our Supreme Court has instructed that “remand to the trial court

[is] more appropriate than unilateral appellate court determination of the warrant’s

validity[.]” McKinney, 361 N.C. at 64, 637 S.E.2d at 875 (citation omitted).

 In McKinney, our Supreme Court was presented with an issue of whether

omitting unlawfully obtained information from a search warrant application would

have still supplied probable cause to issue the warrant. However, because the trial

court’s order “contained limited findings of fact,” none of which “indicate[d] whether

the trial court would have found the evidence seized pursuant to the warrant

admissible even if the tainted evidence had been excised from the warrant

application,” id. at 63, 637 S.E.2d at 875, the Court determined that “the record . . .

[did] not reveal the extent to which consideration of the illegally obtained information

affected the trial court’s determination that the evidence seized pursuant to the

warrant should not be suppressed,” id. Accordingly, the Court “decline[d] to speculate

 - 37 -
 STATE V. TERRELL

 Opinion of the Court

as to the probable outcome . . . had the trial court analyzed the validity of the search

warrant based only on the legally obtained information on the warrant” and instead

“afford[ed] the trial court an opportunity to evaluate the validity of the warrant” in

the first instance. Id. at 65, 637 S.E.2d at 876.

 Accordingly, under McKinney, we reverse the trial court’s ruling on defendant’s

suppression motion and remand this matter to the trial court to determine, in the

first instance, whether probable cause existed to issue the search warrant after

excising from Detective Bailey’s warrant application the tainted evidence arising

from his unlawful search.

 V. Conclusion

 This case presents a novel issue for this Court of how to apply the private-

search doctrine to an after-occurring police search for potential digital contraband on

a privately searched electronic storage device. Guided by the Riley Court’s emphasis

on the tremendous privacy interests implicated in searches of digital data on a cell

phone, and its express rejection of the analogy that a cell phone should be viewed as

a single container in search-incident-to-arrest cases, as well as this Court’s prior

ruling in Ladd, we conclude that the “closed-container” approach we applied to the

videotape search in Robinson should not be extended to searches for digital data on

an electronic storage device. Accordingly, we hold that the trial court erred by

 - 38 -
 STATE V. TERRELL

 Opinion of the Court

concluding Jones’s prior viewing of the thumb drive effectively frustrated defendant’s

expectation of privacy in its entire contents.

 Additionally, while the trial court’s findings did not adequately address the

scope of both searches in order precisely to determine the extent to which Detective

Bailey’s search may have exceeded the scope of Jones’s earlier one, we decline to

remand the matter for more detailed findings. We conclude that such findings would

be immaterial in light of the other findings establishing that Detective Bailey’s search

was not authorized under the private-search doctrine because he did not conduct his

search with the requisite level of “virtual certainty” contemplated by Jacobsen. Since

the additional information Detective Bailey acquired during his warrantless search

was never revealed to him by Jones, the private-search doctrine did not permit him

to use that information to support the warrant application. Accordingly, we hold the

trial court erred by concluding the private-search doctrine authorized Detective

Bailey’s warrantless thumb drive search and, therefore, did not violate defendant’s

Fourth Amendment rights.

 However, because the record “did not reveal the extent to which consideration

of the illegally obtained information affected the trial court’s determination that the

evidence seized pursuant to the warrant should not be suppressed,” McKinney, 361

N.C. at 63, 637 S.E.2d at 875, we reverse the ruling on defendant’s suppression

motion and remand this matter to the trial court with instructions to determine

 - 39 -
 STATE V. TERRELL

 Opinion of the Court

whether excising the evidence acquired during Detective Bailey’s unlawful

warrantless search would have supplied probable cause to issue the search warrant

to forensically examine the thumb drive.

 REVERSED IN PART AND REMANDED.

 Judge TYSON concurs.

 Judge STROUD concurs in part and dissents in part by separate opinion.

 - 40 -
No. COA17-268 – State v. Terrell

STROUD, Judge, concurring in part and dissenting in part.

 The majority opinion considers thirteen images: (1) the “granddaughter

image”2 which was Ms. Jones’s primary concern when she came to the Sheriff’s

Department because it was her granddaughter; (2) two images of nude prepubescent

girls in sexual positions3 (“two seen images”) discovered in the process of confirming

the information law enforcement officers were given about the granddaughter image;

(3) and the remaining ten (“ten deleted images”) discovered through a data recovery

method because they had been deleted from the thumb drive. It is important to

distinguish the three categories of photographs from the outset because Detective

Bailey’s knowledge at certain points in time is relevant to the legal analysis and to

the question remanded to the trial court regarding probable cause.

 It is also essential to understand the convictions regarding the different

categories of images. As I will further discuss later in this dissent a major flaw in

this appeal is that we have none of the images in the record before us, making it

 2 I believe the majority’s use of the term “granddaughter image” is misleading because the
child in the image is not defendant’s granddaughter; this is important in the consideration of probable
cause because any implication of familial relationship or affection between the child in the image and
defendant is false. Defendant was the boyfriend of the child’s grandmother. Nonetheless, I will refer
to the image as the “granddaughter image” to avoid confusion.

 3 The majority opinion never states that Detective Bailey saw two other concerning images,
but it does state there were twelve images at issue in addition to the granddaughter image, and ten of
the twelve Detective Bailey could not have seen while looking for the granddaughter image because
they had been deleted and were only discovered after the search warrant was issued and further
analysis was performed on the thumb drive. This means there were two images at issue Detective
Bailey would have seen while looking for the granddaughter image and because the trial court found
as an unchallenged fact that while looking for the granddaughter image “Detective Bailey saw
photographs of other nude or partially nude prepubescent females posing in sexual positions[,]”
(emphasis added), those photographs must be the two not mentioned by the majority.
 STATE V. TERRELL

 STROUD, J., dissent

difficult to pair a particular image with a specific conviction. We can determine from

the indictment and jury instructions that defendant was convicted of secretly peeping

based upon the granddaughter image. It also appears that a second-degree

exploitation conviction was likely based upon the granddaughter image. As noted by

the majority there were thirteen photographs. Defendant was convicted of twelve

counts of third-degree sexual exploitation, one count of second-degree sexual

exploitation, and one count of secretly peeping, for fourteen total convictions.

Logically this could mean the second-degree exploitation conviction was based upon

the granddaughter image and the twelve third-degree exploitation convictions were

based upon the twelve images other than the granddaughter image. So I will assume

that as to the granddaughter image defendant was convicted of secretly peeping and

second-degree sexual exploitation, and as to the two seen images and the ten deleted

images, defendant was convicted of twelve counts of third-degree sexual exploitation.4

 Now that I have clarified the images and convictions associated with the

images, I will address the reasons for my dissent. I would affirm the trial court’s

denial of defendant’s motion to suppress the granddaughter image based upon the

private search doctrine, and I would find no error as to defendant’s convictions for

secretly peeping and second-degree exploitation of a minor. I dissent in part because

 4 I also make this assumption because it is the defendant’s duty to make sure the record is
complete and includes all of the information necessary to understand the issues presented. See N.C.
Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co., 202 N.C. App. 334, 337, 688 S.E.2d 534,
536 (2010).

 2
 STATE V. TERRELL

 STROUD, J., dissent

there is no need to remand for any issue for the convictions based upon the

granddaughter image. Because Detective Bailey found the two seen images while

verifying Ms. Jones’s report of the granddaughter image, I again would affirm the

trial court in denying defendant’s motion to suppress based upon the private search

doctrine. I also would find no error on the third-degree sexual exploitation of a minor

convictions entered based on the two seen images, and again remand is unnecessary

on those images. As to the remaining ten deleted images and the ten related

convictions for third-degree sexual exploitation of a minor, I agree with the majority

these images do not fall under the private search doctrine and remand is necessary

for the trial court to consider whether Detective Bailey had probable cause to obtain

the search warrant. As to the ten deleted images and their related convictions, I

concur in result only.

 I. Evidence Not in the Record on Appeal

 As I have mentioned, this appeal was filed on issues arising from thirteen

photographic images and none were provided to this Court. If a party is seeking relief

based upon a piece of evidence, that evidence must be in the record before this Court:

 Pursuant to the North Carolina Rules of Appellate
 Procedure, our review is limited to the record on appeal and
 any other items filed with the record in accordance with
 Rule 9(c) and 9(d).
 The Court of Appeals can judicially know only
 what appears of record. Matters discussed in
 a brief but not found in the record will not be
 considered by this Court. It is incumbent upon

 3
 STATE V. TERRELL

 STROUD, J., dissent

 the appellant to see that the record is properly
 made up and transmitted to the appellate
 court.

N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co., 202 N.C. App. 334,

337, 688 S.E.2d 534, 536 (2010) (citations, quotation marks, and ellipses omitted).

The burden is on the appellant to ensure that all the evidence necessary to

understand his argument is in our record. See generally id. Defendant would prefer

that we lump all of the images together in the legal analysis – as the majority has –

since that would increase his chances of having more of his convictions reversed. But

defendant should not benefit from any deficiency in the record.

 II. Granddaughter Image

 As this Court has noted before, “It is said that a picture is worth a thousand

words. In this case, a picture would be worth several thousand words[.]” State v.

Sutton, 232 N.C. App. 667, 673, 754 S.E.2d 464, 468 (2014). None of the thirteen

images were provided to this Court, and on the granddaughter image specifically, this

Court should make no assumptions of potential innocence about that image since we

have not seen it. Perhaps someone could imagine an innocent reason for an unrelated

adult male to have a photograph of his girlfriend’s nine-year-old granddaughter’s

breasts stored in his photographs; someone could also easily imagine other reasons

for the photograph and those reasons would provide not only probable cause for a

future search warrant based upon the image but also grounds for a criminal

 4
 STATE V. TERRELL

 STROUD, J., dissent

conviction. The jury saw the image and they determined it violated North Carolina

General Statute § 14-202(g) and convicted defendant of possessing a photographic

image from peeping; this conviction means the jury found that defendant had taken

the photograph “for the purpose of arousing or gratifying the sexual desire[.]” The

“purpose of arousing or gratifying the sexual desire” is an element of the crime which

the trial court instructed the jury on, and the jury unanimously found the

granddaughter image to have been taken for such a purpose.

 The majority’s characterization of the granddaughter image as “not obviously

child pornography” is perhaps correct but misleading as it ignores the fact that a

partially nude photograph of a child may violate the law, as this one did for secret

peeping and apparently second degree sexual exploitation, even if it is not “obviously

pornographic.” My primary concern is that the majority’s focus on the term

“pornography” could lead the trial court astray on remand. The trial court need not

consider the granddaughter image to be child pornography to find probable cause for

issuance of the warrant. It is true that the warrant affidavit alleged probable cause

to search for “images of child pornography[,] but it also alleged probable cause to

believe the search may reveal “evidence of additional victims and crimes committed

in this case.”

 As the majority notes, the magistrate must be able

 to make a practical, common-sense decision whether, given
 all the circumstances set forth in the affidavit before him .

 5
 STATE V. TERRELL

 STROUD, J., dissent

 . . there is a fair probability that contraband or evidence of
 a crime will be found in a particular place and the trial
 court must review to ensure that the magistrate had a
 substantial basis for concluding that probable cause
 existed.

State v. Benters, 367 N.C. 660, 664, 766 S.E.2d 593, 597–98 (2014) (citation, quotation

marks, ellipses and brackets omitted).

 Even if all of the other images are excluded from consideration, the

granddaughter image along with the other information in the warrant application

and affidavit could support a finding of probable cause to issue the search warrant.

Detective Bailey averred that in 2001 “there was an incident regarding child

pornographic pictures[;]” in 2001 Ms. Jones’s daughter, whom she had with

defendant, had claimed defendant had “touched me down there[;]” and Ms. Jones also

turned over a floppy disk drive from the 2001 “incidents” which she reported

contained “children engaged in multiple sex acts.” The passage of time since 2001

does not eliminate the potential import or relevance of the “incidents” of potential

sexual molestation of a child and possession of child pornography in considering

probable cause for a search warrant. And because the granddaughter image is

evidence of criminal activity, it should also be an important part of the trial court’s

analysis on remand of whether there was probable cause for issuance of a search

warrant to determine if the thumb drive may contain more similarly incriminating

images.

 6
 STATE V. TERRELL

 STROUD, J., dissent

 III. The Two Seen Images

 Turning now to the two images Detective Bailey saw prior to the

granddaughter image, while I generally agree with the majority’s analysis of the

private search doctrine and determination that a thumb drive is not a single

container, the majority’s analysis overlooks the fact that Detective Bailey attempted

to limit his initial search to find the image reported by Ms. Jones. Detective Bailey

acted within the proper scope of the private search doctrine in his discovery of the

granddaughter image and the two seen images as he was trying to confirm the

existence of the granddaughter image. Ms. Jones brought the thumb drive to the

Sheriff’s Department. Ms. Jones did not specify which folder or sub-folder her

granddaughter’s photo was in, nor did she seem aware there were separate folders on

the drive. Ms. Jones testified at the suppression hearing:

 Q. Okay. So, as you clicked on each folder or sub-
 folder, you would open them up and see what the pictures
 were?

 A. Yeah, the pictures were all in one folder and
 then the other folders were like movies because he likes
 military movies and, you know, action movies and that --
 that was it.

 Q. Do you remember the name of the folder or
 any of the sub-folders?

 A. I don't think the folders had a title. It was just
 a thumb – it’s the title of the thumbdrive, purple rain.

(Emphasis added.)

 7
 STATE V. TERRELL

 STROUD, J., dissent

 Since Ms. Jones could not direct Detective Bailey to a particular folder, he

could not go directly to the image but conducted his search reasonably considering

the information Ms. Jones had given him. It is true, as the majority points out, that

the thumb drive had many folders and sub-folders, but Ms. Jones did not understand

how the data was organized on the drive.5 We should not require individuals who

take digital media to law enforcement and report potential sexual exploitation or

abuse of children to be IT experts. Ms. Jones’s understanding was that the thumb

drive overall was entitled “purple rain” and she did not realize that “purple rain” was

the entire drive which contained folders and sub-folders. The trial court also found

in its order that Detective Bailey attempted to confirm the existence of the

“granddaughter image” and discovered “photographs of other nude or partially nude

prepubescent females posing in sexual positions.” Detective Bailey specifically

testified:

 Q. All right. So, at that point were you verifying
 what Ms. Jones had told you she had observed on the
 flashdrive?

 A. Yes.

 Q. And when you were able to verify what she
 told you she had seen on the flashdrive, what did you do?

 5 The trial court found that “[t]he CSI technician placed the purple flash drive into CSI’s
computer and selected the folder that had been identified by Ms. Jones as contained the picture of her
granddaughter[.]” “Folder” was the word Ms. Jones used in her testimony, but in actuality she only
identified the “drive” – the purple rain thumb drive – and not the folder. There were many folders and
sub-folders to choose from within the purple rain thumb drive, and Ms. Jones had not clarified to
Detective Bailey which one contained the granddaughter image.

 8
 STATE V. TERRELL

 STROUD, J., dissent

 A. Then I completed my search.

Thus, the only evidence before the trial court was that Detective Bailey discovered

the two seen images of prepubescent girls in sexual positions before he found the

granddaughter image because upon discovering that image he stopped his search.

 “[T]here is a remarkable dearth of federal jurisprudence elaborating on what

types of investigative actions constitute exceeding the scope” of a private search.

U.S. v. Runyan, 275 F.3d 449, 461 (5th Cir. 2001) (quotation marks and footnote

omitted). The same is true of state court jurisprudence. The unique factual

situations of each private search and the particular “container” involved make cases

difficult to compare. I have sought without success to find another case with a

factual situation as presented here, where a law enforcement officer engages in a

reasonably limited search of a drive only to confirm what the private searcher has

reported but sees other evidence during that search because the private searcher’s

report on the organization of the drive was inaccurate or incomplete. But in Runyan

the Fifth Circuit set out what I deem to be a reasonable “guideline” in considering

the issue before us:

 The guideline that emerges from the above analysis
 is that the police exceed the scope of a prior private search
 when they examine a closed container that was not opened
 by the private searchers unless the police are already
 substantially certain of what is inside that container based
 on the statements of the private searchers, their replication
 of the private search, and their expertise. This guideline is

 9
 STATE V. TERRELL

 STROUD, J., dissent

 sensible because it preserves the competing objectives
 underlying the Fourth Amendment’s protections against
 warrantless police searches. A defendant’s expectation of
 privacy with respect to a container unopened by the private
 searchers is preserved unless the defendant’s expectation
 of privacy in the contents of the container has already been
 frustrated because the contents were rendered obvious by
 the private search. Moreover, this rule discourages police
 from going on fishing expeditions by opening closed
 containers. Any evidence that police obtain from a closed
 container that was unopened by prior private searchers
 will be suppressed unless they can demonstrate to a
 reviewing court that an exception to the exclusionary rule
 is warranted because they were substantially certain of the
 contents of the container before they opened it.

Id. at 463–64. (emphasis added).

 Applying this “guideline” here, the purple thumb drive was “a closed

container” which was opened by Ms. Jones, a private searcher. Id. at 463. Ms.

Jones’s statement to Detective Bailey was that the images were all in one folder, and

she did not believe the drive had multiple folders or sub-folders. Detective Bailey

was “substantially certain” the drive would contain the “granddaughter image” as

described by Ms. Jones. Id. Detective Bailey sought to replicate Ms. Jones’s private

search but since she did not understand the organization of the drive, he could not

go directly to the particular image he was seeking. Detective Bailey saw other

images before he found the one he was seeking, but upon finding the granddaughter

image he stopped and sought a search warrant. Detective Bailey did not go on a

“fishing expedition” after finding the granddaughter image. Id. at 464. This case

 10
 STATE V. TERRELL

 STROUD, J., dissent

differs from any other I have been able to find because Detective Bailey limited his

search to a reasonable effort to find exactly what Ms. Bailey reported and then

stopped and got a search warrant.

 Due to Detective Bailey’s attempts to limit his search only to seeking the

evidence Ms. Jones had brought to his attention, the majority’s analysis wrongly

requires perfection from a private searcher who reports finding contraband and a

law enforcement officer who seeks to confirm existence of contraband as reported by

a private searcher. Ms. Jones did not understand the internal organization of the

thumb drive but described it to Detective Bailey as best she could. And by the

majority’s analysis, unless Detective Bailey had gone directly to the specific

granddaughter image identified by Ms. Jones upon opening the drive, he would

unconstitutionally exceed the scope of her private search. But had Detective Bailey

attempted to get a search warrant without looking at the thumb drive to confirm Ms.

Jones’s report, he would not have had enough information to find probable cause to

support a search warrant. If we require perfection of private searchers and law

enforcement officers, law enforcement officers would have to get a search warrant

before trying to confirm the private searcher’s report of information on any type of

digital media or device. Otherwise, they risk inadvertently finding an incriminating

image before finding the one reported and then all of the evidence may be

suppressed. The majority places law enforcement officers in a Catch 22 of being

 11
 STATE V. TERRELL

 STROUD, J., dissent

unable to confirm the private searcher’s report without a search warrant because of

the risk of accidental discovery of an image other than the one reported but being

unable to get a search warrant without confirming the report.

 The granddaughter image and two seen photos Detective Bailey found while

searching for the granddaughter image fall within the scope of the private search

doctrine, and they too were properly not suppressed by the trial court. Furthermore,

the granddaughter image and the two seen images would support probable cause for

the other ten deleted images, although I agree with the majority that is a

determination the trial court must ultimately make for itself.

 IV. The Ten Deleted Images

 Last, as to the ten deleted images discovered after the search warrant was

issued and upon forensic analysis of the drive, I agree that the private search

doctrine did not extend to these images. The trial court should use the information

in the search warrant affidavit and application, the granddaughter image, and the

two seen images to determine whether there was probable cause to issue the search

warrant which ultimately led to the discovery of the ten deleted images. I therefore

concur with the majority to remand to the trial court to determine probable cause

for issuance of the search warrant for the ten deleted images.

 In summary, I dissent on remand regarding the images and related

convictions for secretly peeping and second-degree exploitation as to the

 12
 STATE V. TERRELL

 STROUD, J., dissent

granddaughter image and the convictions of third-degree exploitation as to the two

seen images. I concur in remanding for a determination of probable cause as to the

ten deleted images.

 13